Mary ARGOE, Plaintiff,

v.

COMMERCE SQUARE APARTMENTS LIMITED PARTNERSHIP, a Delaware Limited Partnership, Leon N. Weiner & Associates, Inc., a Delaware corporation, Green–Meadows Limited Partnership, a Delaware Limited Partnership, d/b/a Mallard's Run Garden Apartments, P. Jules Patt, Mid–Atlantic Asset Management Company, a Delaware corporation, and Humphrey Management Company, a Delaware corporation, Defendants.

C.A. No. 96C–02–026.

Superior Court of Delaware,
Kent County.

Submitted: March 12, 1999.
Decided: April 22, 1999.

Donald E. Gregory, of Doroshow & Pasquale, Dover, DE, for plaintiff.

Barbara A. Fruehauf, of Heckler & Cattie, Wilmington, DE, for defendants P. Jules Patt.

Gary H. Kaplan, of Goldfein & Joseph, Wilmington, DE, for Greenmeadows Limited Partnership.

## OPINION

VAUGHN, Resident Judge.

The Plaintiff, Mary Argoe, slipped and fell at an apartment complex in Smyrna, Delaware, allegedly sustaining personal injuries. She filed her complaint against six entities alleging that each either owned, operated, controlled and/or managed the apartment building. Four of the defendants have been dismissed from the suit, and only defendants Greenmeadows Limited Partnership ("Greenmeadows") and P. Jules Patt ("Patt") remain. These defendants have moved for summary judgment, claiming that they are "absentee landowners" who had entrusted the maintenance of the apartment complex to a management company, and that under the circumstances of this case they have no duty toward Plaintiff and should not be held liable for the conditions at the apartment complex.

### I. BACKGROUND

Plaintiff slipped and fell on an ice covered landing in front of apartment building # 4 at Mallard's Run Apartments in Smyrna, DE on February, 17, 1994. The apartment complex is owned by Greenmeadows, a limited partnership, and Patt, its general partner. The record indicates that the apartment complex is financed through Farmers Home Administration, and that a condition of that financing was that Greenmeadows make arrangements to have the day to day management of the complex performed for it by a management company.

Humphrey, a Maryland corporation, is in the business of managing real estate investment property for owners having need of that service. On or about December 1, 1993, Greenmeadows and Humphrey entered into a management agreement, bearing that date, pursuant to which Humphrey undertook to manage the apartments. Under the management agreement, Humphrey was to be responsible for the daily maintenance, care and operation of the property, including grounds-keeping and snow and ice removal. The pertinent provisions of the agreement were that Humphrey was to manage the apartment complex in accordance with a management plan that was attached to the agreement; Humphrey was to hire a maintenance supervisor who was to report to a Resident Manager, also employed by Humphrey; Humphrey was to handle the renting of the apartment units, and sign leases as agent for Greenmeadows; Humphrey's employees were to maintain the grounds and buildings, make repairs, and collect rents from the tenants. All rents collected were to be deposited into a particular account, and Humphrey was to take its management fees and pay all expenses from that account, with remaining profits going to Greenmeadows. Humphrey had a free hand to perform such repairs and maintenance as might be needed, except that it had to obtain prior approval from Greenmeadows for any single expenditure exceeding $2500.00. The agreement was for a term of one year. Further, it provided that Greenmeadows was to indemnify Humphrey and hold it harmless with respect to project costs, expenses, accounts, liabilities and obligations during the term of the agreement. Finally, Greenmeadows is referred to as the "Owner" and Humphrey is referred to as the "Agent" throughout the agreement. After the agreement was made, Humphrey undertook its management functions and, in fact, managed the apartment complex in its entirety. Patt, the principal of the owner, is a nonresident of Delaware who had never

seen or visited the apartments, and had little actual knowledge of the property.

Greenmeadows and Patt argue that they cannot be held liable for Plaintiff's injuries as mere owners of the property because they did not have actual control of the premises. They contend that all control was relinquished to Humphrey per the management agreement of December 1, 1993. Further, in an affidavit signed by Patt, defendants assert that Humphrey alone exercised actual control over the premises and had the duty to maintain the grounds in a safe condition for tenants and other invitees.

Plaintiff argues that Greenmeadows and Patt retained control and possession of the property as owner/landowner, and that the management contract merely created an agency relationship between the two in which Greenmeadows employed Humphrey as its agent to perform certain management tasks. Plaintiff asserts that this agency relationship does not relieve Greenmeadows, or Patt as its general partner, of the duty to maintain a safe premises under the law.

## II. STANDARD OF REVIEW

 Summary judgment is appropriate if, after viewing the record in the light most favorable to the non-moving party, the court finds no genuine issue of material fact.[1] If the movant supports the motion with proper affidavits, the burden shifts to the non-moving party to show, using support taken from the developed record or with opposing affidavits, that a material issue of fact exists.[2] If there is a reasonable indication that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law, summary judgment will not be granted.[3]

## III. DISCUSSION

 A landowner's duty toward a Plaintiff in a negligence action is a matter of law for the Court to decide.[4] Generally, a landowner has the duty to exercise reasonable care to keep the premises safe for business invitees.[5] This includes making safe any dangerous condition on the land which the landowner either knows about or should discover upon a reasonable inspection of the property.[6] Further, "an owner or occupier of land which is held open with an implied invitation to the public to come upon the land for the mutual benefit of the public and the landowner or occupier has an affirmative duty to keep the premises reasonably safe from the hazards associated with natural accumulations of ice and snow."[7] A landowner should expect that an invitee will proceed to encounter the dangers associated with the ice and snow in reliance upon the fact that the landowner has held the premises open to the invitee.[8]

 There are situations where an owner may cease to have that duty to exercise reasonable care to maintain safe premises, such as where the owner relinquishes possession and actual control of

1. *Guy v. Judicial Nominating Comm'n,* Del.Super., 659 A.2d 777, 780 (1995); *Figgs v. Bellevue Holding Co.,* Del.Super., 652 A.2d 1084, 1087 (1994).

2. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679, 681 (1979); *Del.Super.Ct.Civ.R.* 56(e).

3. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467, 470 (1962), *rev'd in part and aff'd. in part,* 208 A.2d 495 (1965).

4. *Trabaudo v. Kenton Ruritan Club, Inc.,* Del.Super., 517 A.2d 706, 707 (1986).

5. *Hamm v. Ramunno,* Del.Supr., 281 A.2d 601, 603 (1971).

6. *Id.*

7. *Woods v. Prices Corner Shopping Ctr. Merchants Ass'n,* Del.Super., 541 A.2d 574, 577 (1988).

8. *Id.* at 578.

the property to another entity.[9] An example would be the landlord/tenant situation, such as where an owner leases a commercial unit to a tenant who conducts a business on the premises. Actual control, in this context. refers to "actual management of the leased premises."[10] Thus it will not be said that the owner/landlord has actual control of the premises where he reserves only some limited rights, such as the right to inspect or the right to inspect coupled with the right to retake.[11] It is necessary to show actual control in this situation because, once a landlord leases property, he generally relinquishes both control and possession of the leased area to the lessee.[12] Further, a landlord can, by contract, absolve himself of certain legal responsibilities owed to a lessee as long as the contract is clear and explicit.[13] However, it does not necessarily follow that a landowner relinquishes all control and possession of the land merely by making a contract other than a lease, such as a management agreement, with another organization to perform the duties normally associated with land ownership on behalf of the owner, or that a landowner can shield himself from liability by delegating or contracting away his legal duties while retaining the right to enjoy the benefits associated with land ownership.

By contracting with Humphrey to perform management duties, Greenmeadows may have created an agency relationship with Humphrey. Once an agency relationship is created, the principal may then be vicariously liable for the negligent acts of its agent performed within the scope of the agent's authority.[14] Thus, if the management company was the landowner's agent when it maintained the property in the owner's stead, both entities can be held responsible for the management company's negligence in maintaining the property.[15] The Restatement (Second) of Torts recognizes the situation in which a landlord turns over the entire charge of the land to a management company, thus making the management company liable.[16] However, the comments to that rule specifically note that the landlord remains legally accountable concurrently with the management company.[17] This rule is consistent with the general view held by courts throughout the country that a management company is an agent of the landowner, making both liable for any injury or damages caused by the negligence of either.[18]

In the present matter, defendants Greenmeadows and Patt, although owners of the property in question, have handed over the responsibilities associated with

9. *Craig v. A.A.R. Realty Corp.*, Del.Super., 576 A.2d 688, 695 (1989), *aff'd*, Del.Supr., 571 A.2d 786 (1989).

10. *Id.* at 696.

11. *Id.*

12. Restatement (Second) of Torts § 355.

13. *Koutoufaris v. Dick*, Del.Supr., 604 A.2d 390, 402 (1992).

14. *Robinson v. Christina School District*, Del.Super., C.A. No. 92C–12–183, 1994 WL 682468, Bifferato, J. (Nov. 17, 1994), Mem. Op. at 2.

15. Although a landowner may not be liable for the acts of a true independent contractor, *see Rea v. Janosik*, Del.Super., C.A. No. 90C–JA12, 1991 WL 113585, Lee, J. (June 7, 1991), this does not change the law with regard to principles and agents.

16. Restatement (Second) of Torts § 387.

17. Restatement (Second) of Torts § 387, cmt. c.

18. *See Richwind Joint Venture v. Brunson*, 335 Md. 661, 645 A.2d 1147 (1994) (statutory violation held to be the basis for a negligence action against the landowner and its agent management company); *Johnson v. Scandia Assocs., Inc.*, Ind.Ct.App., 641 N.E.2d 51 (1994) (professional landlord found to be equally liable with its management company as it is better equipped to absorb the costs of liability); *E.G. Rock, Inc. v. Danly*, 98 Md. App. 411, 633 A.2d 485 (1993) (management company assumed duty toward tenant to keep her safe, and that duty was imputed to landowner under agency principles).

the daily maintenance of the apartment complex to Humphrey, a management company. This relationship is clearly spelled out in the written management agreement which states, among other things, that the manager is responsible to "remove snow, sand parking lots, and clear the sidewalks of ice." The agreement also states throughout that the manager is responsible for the care and maintenance of the grounds and common areas. Also, all managers of the property are employees of Humphrey, and no officers or employees of Greenmeadows regularly visit the property. Further, it appears that no manager of Humphrey has ever reported to Greenmeadows or Patt regarding upkeep or status of the grounds. Therefore, it appears that Greenmeadows did not exercise actual control, in fact, over the premises. However, as the landowner, it retained the power to exercise control. For example, Greenmeadows retained the power to make inspections of its property, request reports, or contract with another management company if Humphrey failed to perform its duties. Further, Greenmeadows was under a legal obligation to keep its premises safe, and it cannot absolve itself of liability merely by contracting with Humphrey to perform those obligations on its behalf. As noted above, the management agreement did not create a lessor/lessee relationship. On the contrary, it is likely that the contract created an agency relationship between the two entities. This is particularly likely given the fact that the agreement itself refers to the parties in terms of "owner" and "agent".

██ Defendants have failed to show that, as a matter of law, Humphrey was not acting as their agent when it managed the apartment complex on their behalf. Defendants have also failed to show that they relinquished liability for the premises when they transferred actual control to the management company. Plaintiff can prevail if she can show that Humphrey, acting as the agent of the defendants who remained legally liable for their property, acted negligently in failing to use reasonable care to clean away the ice and snow at the apartment complex and that Humphrey's negligence caused her injuries. Therefore, summary judgment is inappropriate at this time.

## IV. CONCLUSION

For the foregoing reasons, defendants Greenmeadows Limited Partnership's and P. Jules Patt's Motions for Summary Judgment are **_DENIED_**.