# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| MARY DOUGHERTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: N14C-05-105 PRW |
| | ) | |
| | ) | |
| BENJAMIN HIBBITS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: June 10, 2015
Decided: August 31, 2015

## MEMORANDUM OPINION AND ORDER

*Upon Defendant's Motion for Summary Judgment,*
**GRANTED.**

Joseph J. Longobardi, III, Esquire, Longobardi & Boyle, LLC, Wilmington, Delaware, Attorney for Plaintiff

Melissa L. Rhoads, Esquire, Jason J. Cummings, Esquire (*argued*), Tighe & Cottrell, P.A., Wilmington, Delaware, Attorneys for Defendant.

**WALLACE, J.**

## I.  INTRODUCTION

This is a dog bite case brought by the Plaintiff Mary Dougherty.  She is suing her friend's landlord, even though it was the friend's dog that bit her and even though the friend's landlord never laid eyes on the dog.  Her theory is that the friend's landlord, Defendant Benjamin Hibbits, breached some duty of care to keep his tenant's (her friend's) dog from biting her.  Mr. Hibbits has moved for summary judgment.  He argues that, under the facts presented here, he owed Ms. Dougherty no duty of care.  Because there is no evidence demonstrating Mr. Hibbits' actual knowledge of the dog's dangerous propensities, his motion for summary judgment is **GRANTED**.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Bobbie Hendrickson rented a house from Mr. Hibbits.[1]  When she did so, Ms. Hendrickson completed a Pet Addendum to the property's Residential Lease.[2]  The Pet Addendum provided that the "Landlord agrees that the pet(s) described in Paragraph 7 may be permitted on the Property" and had a space for Ms. Hendrickson to give a "Description of Pet(s)."[3]  Under Paragraph 7, Ms.

---

[1]    Pl.'s Resp. Br. at ¶ 1.

[2]    Ex. B to Def.'s Mot. Summ. J. (hereinafter "Pet Addendum").

[3]    *Id.*

Hendrickson reported that her dog, Max, was a 55 pound Jack Russell.[4]

What Ms. Hendrickson wrote was partially true. Max was a "medium size[d] dog" she believed was part Jack Russell Terrier.[5] But she also thought Max "had part pitbull[6] in him."[7]

Because Mr. Hibbits lives in Arizona, he and Ms. Hendrickson never met.[8] Mr. Hibbits had hired a realtor to assist him in finding a renter for his Wilmington property.[9] Ms. Hendrickson did not inform the realtor of Max's biting history.[10] Yet Ms. Hendrickson knew well that Max had a history of biting people. He had bitten Ms. Hendrickson's ex-husband and Ms. Hendrickson's granddaughter. He had even bitten Mary Dougherty, the plaintiff in this case. All three prior bites occurred in the five-year span before Ms. Hendrickson moved into the home she rented from Mr. Hibbits.[11]

---

[4]      *Id.*

[5]      Ex. A. to Def.'s Mot. Summ. J. at 10, 16 (hereinafter "Hendrickson Dep.").

[6]      The term "pit bull" is not generally understood to describe one specific dog breed, but more often describes a type of dog from a mix of bull terrier breeds. *See State v. Anderson*, 566 N.E.2d 1224, 1227-30 (Ohio 1991).

[7]      Hendrickson Dep. at 10, 16.

[8]      Def.'s Mot. Summ. J. at 1; Hendrickson Dep. at 8.

[9]      Def.'s Mot. Summ. J. at 1; Hendrickson Dep. at 8.

[10]     Hendrickson Dep. at 36.

[11]     *Id.* at 27-30.

Mr. Hibbits' father-in-law, Leonard Russell, collected monthly rent checks and maintained the property for him.[12] Mr. Russell never asked Ms. Hendrickson if her dog was dangerous; nor did he ask to inspect the dog.[13] Ms. Hendrickson said, in fact, she is unsure if Mr. Russell ever saw Max.[14] Ms. Hendrickson posted "Beware of Dog" signs on her front door and on the gate to her backyard.[15] According to Ms. Hendrickson, when Mr. Russell would come to collect checks at the house she would secure the dog in a separate room inside the house.[16]

On May 12, 2012, Ms. Dougherty went to her friend Bobbie Hendrickson's home. As mentioned, Max had bitten Ms. Dougherty once before. So Ms. Dougherty was careful when approaching the house that day.[17] Upon reaching the entrance to Ms. Hendrickson's backyard, Ms. Dougherty asked Ms. Hendrickson if Max was going to bite her.[18] Ms. Hendrickson replied that Max would not bite.[19]

---

[12]     Def.'s Mot. Summ. J. at 1-2.

[13]     Pl.'s Resp. Br. at ¶ 2.

[14]     Hendrickson Dep. at 34.

[15]     *Id.* at 11-12, 36.

[16]     *Id.* at 12.

[17]     Ex. C. to Def.'s Mot. Summ. J. at 12, (hereinafter "Dougherty Dep.").

[18]     *Id.* at 12, 27.

[19]     *Id.*

Ms. Dougherty let the dog sniff and lick her hand, petted the dog, and entered the backyard after Max moved away and up the porch stairs. When Ms. Dougherty walked toward those stairs, Max turned around and bit her left cheek twice. Ms. Hendrickson secured Max, moved him, and took Ms. Dougherty to a plastic surgeon's office where Ms. Dougherty received stitches to her face.

Ms. Dougherty filed a Complaint against Mr. Hibbits. Ms. Dougherty alleges that she suffered serious injury and permanent scarring as a result of the dog bite, in addition to medical expenses and lost wages.[20] Ms. Hendrickson is not a party to this action.[21] Mr. Hibbits now moves for summary judgment on the grounds that he owed Ms. Dougherty no duty here. In his view he incurred no duty to warn Ms. Dougherty about her friend's dog of which he knew nothing more than what the friend had written in her rental papers and which Ms. Dougherty knew had bitten her before.

## III. PARTIES' CONTENTIONS

Mr. Hibbits argues that he did not owe a duty of care to Ms. Dougherty at the time of the incident.[22] Mr. Hibbits argues that his duty to protect Ms. Dougherty would only have arisen if Mr. Hibbits knew Max had a dangerous

---

[20] Ex. D to Def.'s Mot Summ. J.

[21] *Id.*

[22] Def.'s Mot. Summ. J. at 3.

-5-

propensity.[23] According to Mr. Hibbits, he had never seen the dog in question. Moreover, Ms. Hendrickson failed to disclose when renting the property that her dog had a history of attacking people, including Ms. Dougherty.[24] Ms. Hendrickson testified that neither the Mr. Hibbits nor any of his agents were aware of these prior incidents.[25] The evidence on record, Mr. Hibbits argues, shows there is no genuine dispute of material fact as to his lack of duty to the Ms. Dougherty.

Ms. Dougherty posits that *Kirshner v. Wilmington Housing Authority*[26] establishes the liability imposed upon a landlord in a situation such as this. This liability, she says, accrues "if the landlord knew *or should have known* of the animal's dangerous propensities and had the power through its control over the premises, to remove the animal."[27] Ms. Dougherty argues, and Mr. Hibbits agrees, that his liability may derive from either his or Mr. Russell's knowledge or negligent acts. Both parties agree Mr. Russell was Mr. Hibbits' agent responsible to perform the duties normally associated with land ownership on Mr. Hibbits'

---

[23]    *Id.*

[24]    Hendrickson Dep. at 25-31.

[25]    *Id.* at 31.

[26]    1997 WL 587350 (Del. Sept. 11, 1997).

[27]    Pl.'s Resp. Br. at ¶ 4 (emphasis added).

behalf.[28]    And Ms. Dougherty claims that because of various things Messrs. Hibbits and Russell allegedly knew about Max, Mr. Hibbits was negligent in not preventing her bite.[29]

## IV.    STANDARD OF REVIEW

Summary judgment is granted where the record shows that there are no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law.[30]    The facts must be viewed in the light most favorable to the non-moving party.[31]    The moving party has the burden of proof to show there are no genuine issues of material fact.[32]    If the moving party shows there are no genuine issues of material fact, the burden shifts to the non-moving party to establish the existence of material issues of fact.[33]    "[I]f an essential element of the non-movant's claim is unsupported by sufficient evidence for a reasonable juror to find in that party's favor, then summary judgment is

---

[28]    *Id.* at ¶ 6 (citing *Argoe v. Commerce Square Apartments Ltd. P'ship*, 745 A.2d 251 (Del. Super. Ct. 1999)).

[29]    *Id.* at ¶ 7.

[30]    Del. Super. Ct. Civ. R. 56(c).

[31]    *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[32]    *Id.*

[33]    *Id.* at 681.

appropriate."[34]

## V.  DISCUSSION

### A. Negligence and Landlords Generally.

A claim of negligence requires a plaintiff to establish: "defendant owed plaintiff a duty of care; defendant breached that duty; and defendant's breach was the proximate cause of plaintiff's injury."[35]  In Delaware, proximate cause exists if "a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred."[36]

Generally, landlords owe their tenants a "duty of maintenance and repair."[37] That duty requires the landlord to "maintain the premises in a reasonably safe condition and to undertake any repairs necessary to achieve that end."[38] Moreover, there is a "'well-settled general rule that the duties and liabilities of a landlord to persons on the leased premises by the consent of the tenant are the same as those owed to the tenant himself.'"[39]

---

[34]     *Edmisten v. Greyhound Lines, Inc.,* 2012 WL 3264925, at *2 (Del. Aug. 13, 2012).

[35]     *Pipher v. Parsell*, 930 A.2d 890, 892 (Del. 2007) (internal quotations omitted).

[36]     *Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1097 (Del. 2000).

[37]     *See Ford v. Ja-Sin*, 420 A.2d 184, 186 (Del. Super. Ct. 1980).

[38]     *Id.*

[39]     *Id.* at 187 (quoting 49 Am. Jur. 2d *Landlords and Tenants* § 780 (1970)).

**B. Landlord-Tenant Liability for Dog Bites.**

In Delaware, the only potential common law duty a defendant such as Mr. Hibbits would have to protect a plaintiff such as Ms. Dougherty from a tenant's dog would arise in Mr. Hibbits' "capacity as 1) a harborer of the [d]og or 2) as a landlord of the [d]og's owner and *only if Defendant had knowledge of the [d]og's vicious propensities.*"[40]  The imposition of liability on a landlord occurs when the landlord "knows of the animal's dangerous propensities and the landlord has the power, through its control over the premises, to remove or confine the animal."[41]

**C. "Dangerous" or "Vicious Propensities."**

The Court must first determine what precisely it means for a dog to have "dangerous" or "vicious propensities." Not because there is any doubt that by any definition of those terms, Max had dangerous or vicious propensities.  He did.  But the definition of those terms is crucial here for the purposes of determining whether there is sufficient evidence that Mr. Hibbits could be found to have actual knowledge of those propensities.

Dogs "have from time immemorial been regarded as the friends and companions of man.  The great majority of dogs are harmless, and . . . [c]onsequently the possessor of a dog is not liable for its biting a person . . . unless

---

[40]  *Smith v. Isaacs*, 1999 WL 1240833, at *5 (Del. Super. Ct. Sept. 21, 1999) (emphasis in original).

[41]  *Kirshner v. Wilmington Hous. Auth.*, 1997 WL 587350, at *1 (Del. Sept. 11, 1997).

he has reason to know that it is likely to do so." [42] An animal that "has a tendency to attack human beings or other animals that is abnormal in animals of its class" is considered to have dangerous propensities.[43] More specifically, an animal that "constitutes a physical threat to human beings or other animals, or has a disposition or propensity to attack or bite any person or other animal without provocation . . . one (1) or more times" is a dangerous animal.[44]

A history of biting and attacking humans or animals, however, is not the only behavior by which a dog can be considered dangerous.[45] Agitated and aggressive behavior that is serious enough to cause fear in other humans but falls short of an actual attack also may be evidence of a dog's dangerous propensities.[46]

---

[42] RESTATEMENT (SECOND) OF TORTS § 509 cmt. f (1977).

[43] *Id.* cmt. c.

[44] 3PT1 MATTHEWS MUNICIPAL ORDINANCES § 41:44 (2d ed.) (2015) (MATTHEWS relies on treatises, practice guides, and case law to form a practical guide to drafting ordinances that are both legally correct and understandable).

[45] *See Wright v. Schum*, 781 P.2d 1142, 1144 (Nev. 1989) (evidence demonstrated landlord had sufficient knowledge of dog's dangerous propensities when he was told that his tenants had a pit bulldog that had escaped from its yard on two occasions and "attacked [other tenants'] dogs, seriously injuring one and killing the other" and "promise[d] to the [other tenants] that he would 'take care of the problem'").

[46] *See id.* ("[neighbor] testified that he was very concerned about the dog's aggressiveness. He stated, 'On all occasions [that he] carried a can of wasp knock-down spray with [him] in case the dog happened to come through the fence."); *Donchin v. Guerrero*, 41 Cal. Rptr. 2d 192, 199 (Cal. Ct. App. 1995) ("the neighbor from across the street[ ] declared he was afraid of the Rottweilers and recited incidents justifying that fear . . . . the UPS currier . . . stated he, too, was afraid of the Rottweilers. He contends he saw the Rottweilers once a week, and every time he entered their area they would 'growl and show their teeth, ram the wood fence, attempt to jump the fence and appeared extremely ferocious.'").

For the purposes of landlord-tenant dog bite liability, of course, the landlord must have actual knowledge of such behavior.

### D. Delaware's "Actual Knowledge" Standard for Landlords.

In *Kirshner*, the Delaware Supreme Court found that liability is imposed "when the landlord *knows* of the animal's dangerous propensities and the landlord has the power, through its control over the premises, to remove or confine the animal."[47] The *Kirshner* Court relied upon *Donchin v. Guerrero*, in which the California Court of Appeals explained the "actual knowledge" standard for landlord-tenant dog bite liability.[48]

Under this actual knowledge rule "a landlord can only be liable if he or she had *actual knowledge* of the dog's vicious propensity."[49] Actual knowledge might be shown "by circumstantial evidence the landlord *must* have known about the dog's dangerousness as well as direct evidence he *actually* knew."[50]

Plaintiff argues that *Kirshner* "establishes that liability is imposed upon a landlord if the landlord *knew or should have known* of the animal's dangerous

---

[47] 1997 WL 587350, at *1 (Del. Sept. 11, 1997) (emphasis added).

[48] 41 Cal. Rptr. 2d at 196 ("a landlord who does not have actual knowledge of a tenant's dog's vicious nature cannot be held liable when the dog attacks a third person")

[49] *Id.* (citing *Uccello v. Laudenslayer*, 118 Cal. Rptr. 741 (Cal. Ct. App. 1975) (emphasis added).

[50] *Id.* (emphasis in original).

propensities and had the power through its control over the premises, to remove the animal."[51] But *Kirshner* nowhere articulates a "*should have known*" standard for a landlord's knowledge of a tenant's animal's dangerous propensity. Nor does the law relied upon by the *Kirshner* court allow for a mere showing that the landlord *should have known* of the dog's propensities.[52]

The Court finds that the correct standard in Delaware for landlord-tenant dog bite liability is the landlord's *actual knowledge* of a dog's vicious or dangerous propensities.

### E. Mr. Hibbits Personally Lacked Actual Knowledge of Max's Dangerous Propensities.

An essential element of Ms. Dougherty's claim, therefore, is that Mr. Hibbits had actual knowledge of Max's vicious or dangerous propensities.

There is no record evidence that Mr. Hibbits himself had actual knowledge of the dog's dangerous propensities. Mr. Hibbits resided in Arizona and had never seen Max.[53] The only knowledge about Max that Mr. Hibbits had was from the

---

[51]    Pl.'s Resp. Br. at ¶ 4 (emphasis added).

[52]    For instance, in *Donchin*, the court observed that "only where the circumstances are such that the defendant 'must have known' and not 'should have known' will an inference of actual knowledge be permitted." 41 Cal. Rptr. at 196 (internal quotations omitted). *See also Cronin v. Chrosniak*, 536 N.Y.S.2d 287, 288 (N.Y. App. Div. 1988) ("if during the term of the leasehold a landlord becomes aware of the fact that his tenant is harboring an animal with vicious propensities, he owes a duty to protect . . . ").

[53]    Def.'s Mot. Summ. J. at 4.

rental application's Pet Addendum that Ms. Hendrickson was required to fill out. Ms. Hendrickson testified that the dog was a 75-pound pit bull mix[54] but listed the dog as a 55 pound Jack Russell terrier on the Pet Addendum.[55] Ms. Hendrickson further testified that, to her knowledge, the Defendant was not aware of the dog's prior bite history.[56]

Drawing reasonable inferences in Ms. Dougherty's favor, the Court cannot find that Mr. Hibbits personally had actual knowledge of Max's dangerous propensities without speculation or conjecture, and that does not satisfy the actual knowledge standard. [57]

## F. Mr. Hibbits' Agent Had No Actual Knowledge of Max's Dangerous Propensities.

To infer that Mr. Hibbits' agent, Mr. Russell, had actual knowledge of the dog's dangerous propensities is through speculation and conjecture. Ms.

---

[54]    Hendrickson Dep. at 16.

[55]    Pet Addendum.

[56]    Hendrickson Dep. at 31.

[57]    *See In re Asbestos Litigation (Helm)*, 2007 WL 1651968, at *16 (Del. Super. Ct. May 31, 2007 *rev. and corr*. June 25, 2007) ("The Court must decline to draw an inference for the non-moving party if the record is devoid of facts upon which the inference reasonably can be based. 'Where there is no precedent fact, there can be no inference; an inference cannot flow from the nonexistence of a fact, or from a complete absence of evidence as to the particular fact.' Nor can '[a]n inference [ ] be based on surmise, speculation, conjecture, or guess, or on imagination or supposition.'"); *see also Donchin*, 41 Cal. Rptr. 2d at 196 ("'actual knowledge can be inferred from the circumstances only if, in light of the evidence, such inference is not based on speculation or conjecture'") (quoting *Uccello v. Laudenslayer*, 118 Cal. Rptr. 741, 748 n.4 (Cal. Ct. App. 1975)).

Hendrickson was "not really sure" "if Mr. Russell ever saw the dog"[58] or even knew what breed Max was.[59] She was "not sure if [she] had mentioned" to Mr. Russell that Max "had bitten people before." [60] At best, Ms. Hendrickson believed she "probably told" Mr. Russell that the dog was "rambunctious" and "probably told [Mr. Russell]" to be cautious when he came to the house.[61]

Ms. Dougherty suggests two aspects of Ms. Hendrickson's testimony establish a material issue of fact about whether Mr. Russell had actual knowledge of Max's dangerous propensities: (1) her posting of "Beware of Dog" signs;[62] and (2) the fact that Ms. Hendrickson always kept Max secured in another room when Mr. Russell came to her house to collect rent or perform maintenance.[63]

There are indeed numerous facts which a dog bite plaintiff might introduce to show a material issue of fact regarding a landlord defendant's knowledge of a dog's dangerous propensities. These include: observations of agitated and

---

[58]   Hendrickson Dep. at 34.

[59]   *Id.* at 33-34.

[60]   *Id.* at 35-36.

[61]   *Id.* at 34-36.

[62]   *Id.* at 36.

[63]   Pl.'s Rep. Br. at ¶ 3.

aggressive behavior towards humans,[64] reports of aggressive behavior by third parties; and actions taken by the landlord to remove the dog from the premises.[65] But the record evidence Ms. Dougherty relies upon here is insufficient for a reasonable juror to find Mr. Russell had actual knowledge of Max's vicious propensities that could be attributed to Mr. Hibbits.[66]

## IV. CONCLUSION

Max was a dog with vicious or dangerous propensities. He had bitten people before, one of whom was Ms. Dougherty. Mr. Hibbits was Max's owner's landlord who would have incurred a duty to protect Ms. Dougherty from her friend's dog, Max, *"only if [Mr. Hibbits] had knowledge of the [d]og's vicious*

---

[64] *See Donchin v. Guerrero*, 41 Cal. Rptr. 2d 192, 200 (Cal. Ct. App. 1995) ("[landlord] through previous visits to the property, was aware of the presence of the dogs . . . and . . . undoubtedly witnessed displays of territorial aggressive behavior in these dogs. . . . [landlord] observed the two Rottweilers on a number of occasions.").

[65] *See Wright v. Schum*, 781 P.2d 1142, 1144 (Nev. 1989) (denying summary judgment when landlord's neighbor "complained to him that the [dog owner's] had a pit bulldog and that it had escaped from its yard on two occasions and attacked their dogs . . . . [landlord promise[d] to the [neighbors] that he would 'take care of the problem'"); *Cronin v. Chrosniak*, 536 N.Y.S.2d 287, 288 (N.Y. App. Div. 1988) (denying summary judgment when "record before [the Court] clearly establishes that plaintiff . . . . submitted the . . . testimony of [the landlord], who testified that she knew that the dog had attacked an upstairs neighbor's cat and that she had asked her tenants, defendants Chrosniak, on several occasions to get rid of the dog.").

[66] *See Sers v. Manasia*, 720 N.Y.S.2d 192, 192 (N.Y. App. Div. 2001) ("Liability cannot be premised solely on the fact that the dog was occasionally confined in a pen on the property . . . . use of 'Beware of Dog' signs on his other residence, where the dog once lived, does not raise a triable issue of fact as to the dog's vicious propensities."); *see also Edmisten v. Greyhound Lines, Inc.,* 2012 WL 3264925, at *2 (Del. Aug. 13, 2012) ("[I]f an essential element of the non-movant's claim is unsupported by sufficient evidence for a reasonable juror to find in that party's favor, then summary judgment is appropriate.").

*propensities.*"[67]  The record evidence demonstrates that neither Mr. Hibbits (nor his father-in-law) had knowledge of any such dangerous propensities.  Without a cognizable duty of care owed to Ms. Dougherty, there can be no actionable negligence.  Accordingly, Defendant Benjamin Hibbits' Motion for Summary Judgment is **GRANTED**.

       **IT IS SO ORDERED.**

                             */s/ Paul R. Wallace*
                             **PAUL R. WALLACE, JUDGE**

Original to Prothonotary
cc:  All counsel via File & Serve

---

[67]    *Smith v. Isaacs*, 1999 WL 1240833, at *5 (Del. Super. Ct. Sept. 21, 1999) (emphasis in original); *Kirshner v. Wilmington Hous. Auth.*, 1997 WL 587350, at *1 (Del. 1997).