**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

UNIFIED DOOR & HARDWARE/     )
PREVENT SECURITY,     )
    )
    Appellant,     )
    )
       v.     )    C.A. No. N25A-04-001 CLS
    )
THOMAS LOGULLO, JR.,     )
    )
    Appellee.    

Date Submitted: July 22, 2025
Date Decided: October 22, 2025

**MEMORANDUM OPINION**

*On Appeal from the Industrial Accident Board,*
**AFFIRMED in part, REVERSED in part**.

Nicholas E. Bittner, Esquire of HECKLER & FRABIZZIO, *Attorney for Appellant*.

Jessica L. Welch, Esquire of DOROSHOW, PASQUALE, KRAWITZ & BHAYA, *Attorney for Appellee*.

**SCOTT, J.**

**INTRODUCTION**

This matter comes before the Court on appeal by Employer from a decision of the Industrial Accident Board of Delaware ("IAB") to compensate Claimant for work-related injuries sustained in a motor vehicle accident.

After a hearing, the Board found that Claimant's injuries were compensable and causally related to the work accident, concluded that Claimant was totally disabled and would continue to be totally disabled, and awarded Claimant attorneys' fees and medical witness fees.

For the reasons set forth below, the Board's decision was supported by substantial evidence and free from legal error, but the attorneys' fees awarded exceeded the statutory maximum. Thus, the Board's decision is **AFFIRMED** in part, **REVERSED** in part.

**FACTUAL AND PROCEDURAL HISTORY**[1]

I. CLAIMANT'S ACCIDENT AND THE HEARING

On September 11, 2020, Thomas Logullo, Jr. ("Claimant"), suffered injuries to his neck, left shoulder, and low back while in the scope and course of his employment as a security technician for Unified Door and Hardware/Prevent Security ("Employer").[2] The incident occurred when Claimant was driving the

---

[1] The facts are taken from the record provided by the IAB.
[2] Tr. Logullo, IAB Hearing No. 1504830, at 55, 57–60.

company van to a job site and a car rear-ended Claimant at a stop light, causing the company van to hit the car in front of it.[3] The impact caused books and manuals that were in the van to fall on top of Claimant.[4]

On September 6, 2022, Claimant filed a petition to determine compensation due for his neck, left shoulder, and low back injuries that resulted from the motor vehicle accident on September 11, 2020.[5] The Board held a hearing on Claimant's petition on October 24, 2024. The Board heard testimony from Claimant and considered deposition testimony from Dr. James Zaslavsky, D.O., on behalf of Claimant and Dr. Scott A. Rushton, M.D., and Dr. Samuel Matz, M.D., on behalf of Employer.

Claimant testified that immediately following the accident police responded to the scene, but he did not report any injuries at that time and drove home.[6] Despite being able to drive the van home, Claimant did not work the rest of the day because he was "in shock."[7] Claimant also stated that he was initially concerned about seeking treatment because of his medical history and the heightened risk amidst the

---

[3] Tr. Logullo, IAB Hearing No. 1504830, at 57.
[4] *Id.* at 60.
[5] *See generally* Claimant's Pet. to Determine Compensation Due, *Logullo v. Unified Door & Hardware/Prevent Security*, IAB Hearing No. 1504830 (Sept. 6, 2022).
[6] Tr. Logullo, IAB Hearing No. 1504830, at 57–60.
[7] *Id.* at 58.

ongoing COVID-19 pandemic.[8]  At the time of the accident, Claimant was receiving treatment for atrial fibrillation ("AFib").[9]

In the days following the accident, Claimant experienced worsening pain in his neck, shoulders and low back.[10]  Radiating pain from the injuries developed into headaches, tingling, and numbness.[11]  Hoping the pain would "subside," Claimant modified his work hours to an "average[] [of] maybe 20 hours for the next couple weeks."[12]  By the end of September, Claimant's symptoms "were[] [not] getting better."[13]  On September 28, 2020, Claimant reported his symptoms to his primary care doctor at the Department of Veteran's Affairs ("VA").[14]

In October 2020, Dr. Michael Kelman fully examined and provided Claimant with chiropractic care twice per week.[15]  Dr. Kelman continued to monitor Claimant's condition and took Claimant out of work.[16]  Although the chiropractic care provided temporary relief, it did not resolve his pain, so Dr. Kelman ordered MRI studies of Claimant's neck and back.[17]  He was then referred to Dr. Zaslavsky,

---

[8] Tr. Logullo, IAB Hearing No. 1504830, at 60–61.
[9] *Id.* at 61.
[10] *Id.* at 58–59.
[11] *Id.* at 62.
[12] *Id.* at 59.
[13] *Id.* at 60.
[14] *Id.* at 61–62.
[15] *Id.* at 64.
[16] *Id.*
[17] *Id.* at 64–65;  Tr. Zaslavsky, IAB Hearing No. 1504830, at 29.

an orthopedic surgeon, for further evaluation.[18]  Claimant underwent MRI studies on January 27, 2021 and Dr. Zaslavsky performed a full examination, including a "complete [medical] history" of Claimant in March 2021.[19]

Dr. Zaslavsky has been one of Claimant's treating physicians since March 2021.[20]  When Dr. Zaslavsky first examined Claimant in March 2021, Claimant told Dr. Zaslavsky about the motor vehicle accident and that he "developed neck pain that radiates into both of his shoulders and into his arms . . . . He also [had] numbness and tingling and headaches."[21]  Claimant informed Dr. Zaslavsky that he was having "difficulty lifting, sitting, and driving."[22]  Dr. Zaslavsky testified that Claimant "did not have any history of neck problems before the motor vehicle injury[.]"[23]

Dr. Zaslavsky explained that Claimant's symptoms of numbness, tingling, and radiating pain in Claimant's neck were "indicative of cervical radiculopathy and some type of narrowing around that nerves that is symptomatic at this time."[24]  Dr. Zaslavsky performed a Spurling's test which is a "compressive maneuver of the foramen . . . in the cervical spine[,]" that if positive, "elicits shooting pain into the

---

[18] Tr. Logullo, IAB Hearing No. 1504830, at 65;  Tr. Zaslavsky, IAB Hearing No. 1504830, at 4.
[19] Tr. Logullo, IAB Hearing No. 1504830, at 65;  Tr. Zaslavsky, IAB Hearing No. 1504830, at 6, 18.
[20] Tr. Zaslavsky, IAB Hearing No. 1504830, at 6.
[21] *Id.* at 20.
[22] *Id.* at 19.
[23] *Id.*
[24] *Id.* at 20.

arm[.]"[25]  Claimant tested positive on his left side.[26]  Dr. Zaslavsky also reviewed Claimant's MRI films and report from January 2021.[27]  "The MRI showed a considerable amount of degenerative changes, especially at C3-[C]4 and C5-[C]6. At those two levels, there appeared to be disc protrusions, disc osteophyte complexes.  At C5-[C]6, there was a severe amount of foraminal compression bilaterally."[28]

Based on Claimant's complaints, the positive left-sided Spurling's test, and the MRI films and report, Dr. Zaslavsky diagnosed Claimant with stenosis.[29]

> Stenosis is . . . a compression of the nerves as they leave the spine by sometimes an acute disc herniation, which is a large piece of disc material that could be squeezing the nerves, and sometimes it[] [is] just through degenerative changes where there[] [is] facet overgrowth and ligamentum hypertrophy, which are signs of degenerative disease. When a person has stenosis, there[] [is] always a critical threshold to where it becomes symptomatic.[30]

> When that pain crosses a threshold . . . we get a hundred percent symptoms.  You get shooting pain, you get numbness, you get tingling into the fingers.  You start to get weakness along the path of the crushed nerve, and you start to develop considerable neurologic changes which can significantly impact your life.[31]

---

[25] Tr. Zaslavsky, IAB Hearing No. 1504830, at 20.
[26] *Id.* at 20–21.
[27] *Id.* at 20.
[28] *Id.* at 21–22.
[29] *Id.* at 20–22, 28.
[30] *Id.* at 22.
[31] *Id.* at 23.

Dr. Zaslavsky opined that the motor vehicle accident on September 11, 2020 triggered the symptoms of stenosis that Claimant reported.[32] Because Claimant's pain has not resolved with epidural injections, physical therapy, or chiropractic care, Dr. Zaslavsky recommended Claimant undergo a C5-C6 disc replacement surgery.[33]

Dr. Rushton concluded that Claimant's complaints were not indicative of cervical radiculopathy.[34] Dr. Zaslavsky disagreed, explaining that Claimant's

> films and his report of his films with a trained eye shows us that he has severe foraminal stenosis at C5-[C]6. It[] is blatantly obvious this disc space level is much different than the other disc space levels. Even C3-[C]4 is not nearly as bad to the same degree that C5-[C]6 is at this time. His radicular symptoms that are noted on every physical exam and every history that he's ever given anybody, with radiating . . . pain into his upper extremities, are along the C6 dermatome. And he has a positive Spurling's maneuver on every exam I[] [have] ever done on [Claimant], and on Dr. Kelman's examinations as well.

> So with a high degree of medical probability across multiple providers, he[] [is] reporting symptoms that relate to cervical radiculopathy. His mechanism of injury being a rear-end collision that was hard enough to drive him into the car in front of him is consistent with aggravation of a pre-existing condition that leads to cervical radiculopathy. And his testing [is] both objective[ly] and subjective[ly] . . . consistent with cervical radiculopathy.[35]

Dr. Zaslavsky confirmed his findings with an updated MRI from August 5, 2022.[36]

---

[32] Tr. Zaslavsky, IAB Hearing No. 1504830, at 24.
[33] *Id.* at 27–28.
[34] Tr. Rushton, Hearing No. 1504830, at 46.
[35] Tr. Zaslavsky, IAB Hearing No. 1504830, at 68–69.
[36] *Id.* at 69.

Dr. Zaslavsky also reviewed the January 2021 MRI study of Claimant's low back, which showed a "host of degenerative problems throughout" Claimant's low back, including a disc protrusion and retrolisthesis of L5-S1 and foraminal stenosis.[37] Claimant reported a previous low back injury from an unrelated work accident in 2006 that Claimant had surgery for in 2008.[38] Dr. Zaslavsky opined that the trauma from the 2020 motor vehicle accident aggravated the pre-existing condition in Claimant's low back from his injury in 2006 because there was "little mention" of low back pain from 2011 until the accident in 2020.[39] Since the accident in 2020, Claimant's low back has been treated with chiropractic care, physical therapy, and epidural injections to relieve the pain, and Dr. Zaslavsky recommended that Claimant continue to be monitored with the possibility of further injections.[40]

Finally, Dr. Zaslavsky testified that a January 2024 MRI showed "considerable tears in both [of Claimant's] shoulders."[41] Dr. Jeremie Axe performed surgery on Claimant's right shoulder in July 2024, which has provided Claimant with complete relief.[42] Dr. Zaslavsky concluded that the tears were causally related to the September 2020 work accident because the tears "correlated to [Claimant's]

---

[37] Tr. Zaslavsky, IAB Hearing No. 1504830, at 44–45, 66.
[38] *Id.* at 19–20.
[39] *Id.* at 40–43.
[40] *Id.* at 42–43, 46.
[41] *Id.* at 29, 76.
[42] *Id.* at 75, 78.

complaints and . . . symptoms," and "the mechanism of his injury."[43] Consequently, Dr. Zaslavsky recommended Claimant undergo the same surgery to his left shoulder before the C5-C6 disc replacement surgery since "doing a smaller surgery first . . . could offer significant improvement[,]" which "could potentially give . . . an idea of how much pain is left in the cervical spine afterwards."[44]

Between the time of the accident and the hearing, Claimant's treatment plan was complicated by other severe health conditions unrelated to the September 2020 work accident. As mentioned above, Claimant was being treated with medication for AFib. Claimant was also in liver failure due to alcoholism and had a liver transplant in June 2022.[45] These conditions prevented Claimant's physicians from attempting more invasive treatment for the injuries Claimant sustained in the September 2020 work accident.[46] In the meantime, Claimant continued with chiropractic care and physical therapy.

After a successful liver transplant, the Center for Interventional Pain and Spine was able to safely provide Claimant with epidural injections by September 2022 in his shoulders and neck.[47] The injections provided Claimant with "excellent temporary relief," but as with other conservative treatment, the injections did not

---

[43] Tr. Zaslavsky, IAB Hearing No. 1504830, at 81.
[44] *Id.* at 80.
[45] *Id.* at 12.
[46] *Id.* at 13.
[47] *Id.* at 30–31.

resolve the injuries.[48]  The Center for Interventional Pain and Spine also prescribed Claimant with oxycontin.[49]

Dr. Zaslavsky opined with a reasonable degree of medical probability that the treatments Claimant has received and the recommendations for further, more invasive treatment to the neck and left should are "reasonable, necessary, and causally related" to the motor vehicle accident on September 11, 2020.[50]

After a full examination of Claimant and a review of all Claimant's imaging and medical records, Dr. Rushton and Dr. Matz both opined that the motor vehicle accident in September 2020 did not cause Claimant's injuries.  Both experts took issue with the two-week time period between the time of the accident and when Claimant reported his symptoms to the VA.[51]  According to Dr. Rushton, "[a] true traumatic radiculopathy that emanates from a traumatic injury to the nerve root" should result in a "near-immediate onset of symptoms, at least within a 24-hour window of an injury pattern."[52]  Dr. Zaslavsky disagreed, stating that two weeks was reasonable because "a lot of patients will attempt some conservative care and . . . hope that things get better."[53]

---

[48] Tr. Zaslavsky, IAB Hearing No. 1504830, at 31.
[49] Tr. Logullo, IAB Hearing No. 1504830, at 75.
[50] Tr. Zaslavsky, IAB Hearing No. 1504830 at 44–45, 50.
[51] Tr. Rushton, IAB Hearing No. 1504830, at 21; Tr. Matz, IAB Hearing No. 1504830, at 16–17.
[52] Tr. Rushton, IAB Hearing No. 1504830, at 21.
[53] Tr. Zaslavsky, IAB Hearing No. 1504830, at 20.

Dr. Zaslavsky recommended that Claimant has been and will continue to remain totally disabled from the accident in September 2020 because Claimant continues to have pain with basic activities such as driving, standing, lifting, or bending.[54] The goal for both Dr. Zaslavsky and Claimant is that the recommended surgical intervention to Claimant's neck and left shoulder will allow Claimant to return to work.[55]

## I.    THE BOARD'S DECISION

On March 23, 2025, the Board issued its decision in favor of Claimant.[56] The Board summarized the evidence of Claimant's live testimony and the depositions of the medical experts who testified on behalf of Claimant and Employer.[57]

First, the Board found that Employer's injury was compensable under 19 *Del. C.* § 2304.[58] Noting that "Employer has not acknowledged that a specific work accident happened[,]" the Board concluded that the testimony established that Claimant's injury was within the course and scope of employment.[59]

Next, the Board determined that Claimant met his burden of proof with respect to causation.[60] In its analysis, the Board noted various "complicating factors"

---

[54] Tr. Zaslavsky, IAB Hearing No. 1504830, at 47–48.
[55] *Id.* at 48; Tr. Logullo, IAB Hearing No. 1504830, at 66.
[56] *See generally Logullo v. Unified Door and Hardware/Prevent Security*, Hearing No. 1504830 (Mar. 25, 2025) (hereinafter "IAB Decision").
[57] *Id.* at 2–19.
[58] *Id.* at 20.
[59] *Id.*
[60] *Id.* at 21.

contributing to the course of Claimant's treatment.[61]   Specifically, Claimant's unrelated health conditions "prevented [him] from taking advantage of certain modalities at critical junctures."[62]   The Board acknowledged that Claimant's admission to alcohol use before his liver transplant, in addition to the marijuana and opioid use "can alter a person's awareness of symptoms."[63]   Finally, the Board found the case to be even more complicated considering the "diametrically opposed expert medical opinions" from Dr. Zaslavsky, Dr. Rushton, and Dr. Matz.[64]

The Board resolved the complicating factors in favor of Claimant, concluding that he met his burden of proving that the work-related accident caused the injuries to Claimant's neck and left shoulder, and reinjured his low back.[65]   According to the Board, Claimant's neck and left shoulder injuries were new "and/or caused degenerative conditions to become symptomatic possibly for the first time."[66]   The care Claimant received for his neck and left shoulder before the hearing and the surgeries recommended for both were compensable.[67]

The Board concluded that Claimant's previous injury to his low back had resolved and was aggravated by the instant work-related accident.[68]   However, the

---

[61] IAB Decision at 21.
[62] *Id.* at 20–21.
[63] *Id.* at 21.
[64] *Id.* at 21.
[65] *Id.*
[66] *Id.* at 20.
[67] *Id.* at 21.
[68] *Id.* at 20.

Board did find that Claimant's low back injury resolved by January 26, 2021.[69] The Board was "persuaded by Dr. Rushton['s]" opinion that Claimant sustained a "soft tissue injury in the form of a lumbar strain and sprain[,]" which was reasonably treated with chiropractic care and limited physical therapy.[70] Hence, the Board limited compensation for Claimant's low back injury to the care received up to January 26, 2021.[71]

The Board also concluded that "Claimant shall remain totally disabled from September 11, 2020, until such time that Claimant has recovered from his left shoulder repair and his C5-C6 disc replacement surgery[.]"[72]

Finally, the Board awarded Claimant attorney's fees and medical witness fees.[73] Under 19 *Del. C.* § 2320(10)a., and the factors set forth in *General Motors Corp. v. Cox*,[74] the Board awarded Claimant $14,500 in attorneys' fees and medical witness fees.[75] Employer now appeals the Board's decision.[76]

---

[69] IAB Decision at 21.
[70] *Id.* at 15, 21.
[71] *Id.* at 21.
[72] *Id.* at 22.
[73] *Id.* at 23.
[74] 304 A.2d 55 (Del. 1973).
[75] IAB Decision at 22–23.
[76] *See generally* Appellant's Opening Br., D.I. 7 ("Opening Br.); Appellee's Answering Br., D.I. 10 ("Answering Br."); Appellant's Reply Br., D.I. 11 ("Reply Br.').

## STANDARD OF REVIEW

The Court reviews decisions of the Industrial Accident Board only to determine whether the decision of the Board is free from legal error and whether the Board's findings are supported by substantial evidence.[77]

Legal errors are reviewed *de novo*.[78] "A Board's decision based upon the proper legal standard is a prerequisite to the court's performance of a review to determine the existence of substantial evidence."[79]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"[80]—it "falls somewhere between a scintilla and a preponderance of the evidence."[81] It is not the Court's role to "independently weigh the evidence, determine questions of credibility, or make its own factual findings, but rather, to 'view the record in the light most favorable to the prevailing party below.'"[82]

---

[77] *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016) (quoting *Stanley v. Kraft Foods, Inc.,* 2008 WL 2410212, at *2 (Del. Super. Mar. 24, 2008)).

[78] *Roos Foods*, 152 A.3d at 118 (citing *Pers.–Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[79] *Baxter v. Verizon Commc'ns*, 2024 WL 3581660, at *3 (Del. Super. July 30, 2024).

[80] *Id.* (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[81] *Diamon Fuel Oil v. O'Neal*, 734 A.2d 1060, 1062 (Del. 1999) (citing *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988)).

[82] *United Parcel Serv. v. Willis*, 2024 WL 5039034, at *6 (Del. Super. Dec. 6, 2024) (citing *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015); *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1258–59 (Del. 2010)).

"If there is no error of law and substantial evidence supports the Board's findings, 'the Board's decision must be affirmed.'"[83]

## DISCUSSION

### I. THE BOARD'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND FREE FROM LEGAL ERROR.

Employer's first contention on appeal is that the Board erred by finding Claimant's injuries were causally related to the September 11, 2020 work accident. According to Employer, the Board's decision is "incompatible with the requirements laid upon it[,]" because the Board's "discussion on the merits is contained within about two pages."[84] Employer claims that "[s]ummarizing inherently contradictory testimony and then merely pronouncing the victor cannot constitute substantial evidence."[85] Employer states that the Board's decision is "legally untenable, as there is nothing for [the] Court to review."[86] Employer further contends that the Board "acted arbitrarily and capriciously" by finding the left shoulder injury compensable because it was not ripe for decision.[87]

---

[83] *Zayas v. State*, 273 A.3d 776, 785 (Del. 2022) (quoting *Stevens v. State*, 802 A.2d 939. 944 (Del. Super. 2002)).
[84] Opening Br. at 21.
[85] Reply Br. at 21.
[86] Opening Br. at 21.
[87] *Id.* at 29.

**A. The entirety of the Board's decision provides sufficient detail for judicial review when taken as a whole.**

The Board's decision is not legally untenable, as the summary of the evidence and findings of fact, when read together, provide sufficient detail as to why the Board adopted Dr. Zaslavsky's findings as to Claimant's injuries.

This Court's decision in *Justison v. Home Health Corporation* is instructive.[88] The *Justison* Court held that

> a [b]oard's decision [must] be clear in its reasoning, but where the testimony has been explained as part of the preface to the findings of fact and law and where the [b]oard's decision contains the appropriate details which led to its reasoning, this Court will not reverse simply because the [b]oard did not repeat those facts in its "Findings."[89]

Similarly, in *Tristate Roofers v. Gonzalez-Rodriquez*, this Court found the board's "decision, when read as a whole, [was] sufficiently specific for judicial review" despite its "bifurcated . . . conclusions and supporting facts."[90]

The Board's bifurcation of the summary of the evidence and the findings of fact does not render the decision "void."[91] The Board clearly evaluated and explained Dr. Zaslavsky's, Dr. Rushton's, and Dr. Matz's opinions and Claimant's testimony. The summary of the evidence in the Board's written decision, followed by its conclusions, contains the appropriate details that led to the reasoning for

---

[88] 1999 WL 463702, at *1 (Del. Super. May 19, 1999).
[89] *Id.* at *4.
[90] 2018 WL 7021940, at *5 (Del. Super. Dec. 31, 2018).
[91] *See* Opening Br. at 19.

finding in Claimant's favor. Therefore, this Court will not reverse "simply because the Board did not repeat those facts in its" conclusions.[92]

Moreover, "[w]hen a [b]oard decides not to expressly state certain findings, the courts are capable of inferring from the [b]oard's conclusions what the underlying findings must have been[,]" making remand "an unnecessary formality."[93] Given that the summary of the evidence explains Dr. Zaslavsky's diagnosis and the reasoning for his diagnosis and recommendations, the Court can infer from the Board's conclusion of finding in Claimant's favor that the Board found Dr. Zaslavsky's opinion more credible and persuasive. In sum, the Board's decision, taken as a whole, is sufficient for judicial review.

### B. The Board's decision is supported by substantial evidence.

Employer argues that the Board's decision lacks substantial evidence that the September 11, 2020 work accident caused Claimant's injuries.[94] Specifically, Employer contends that the Board must make "specific findings of credibility and adopt[] the opinions of one doctor while rejecting the opinions of the other, accompanied by reasoning and rationale for the same."[95] Ultimately, Employer

---

[92] *Justison*, 1999 WL 463702, at *4.

[93] *Keith v. Dover City Cab Co.*, 427 A.2d 896, 899 (Del. Super. Jan. 30, 1981) (citing *Board of Pub. Educ. in Wilmington v. Rimlinger*, 232 A.2d 98 (Del. 1967)); *see also Tristate Roofers*, 2018 WL 7021940, at *5.

[94] Opening Br. at 22.

[95] *Id.* at 18.

asserts that the Board acted unreasonably by adopting Dr. Zaslavsky's opinion over Employer's expert opinions without explaining why.[96]

The Board "may adopt the opinion testimony of one expert over another; and that opinion, if adopted, will constitute substantial evidence for purposes of appellate review."[97] Expert medical testimony may also be supplemented by credible lay testimony to constitute substantial evidence.[98] The Board may also "accept or reject an expert's testimony in whole or in part."[99]

The Court is also guided by the Delaware Supreme Court's decision in *DiSabatino Bros., Inc. v. Wortman*.[100] There, the Delaware Supreme Court considered whether the board's decision on the issue of a conflicting diagnosis "require[d] clarification or, to put it another way, whether the decision has substantial support in the record as it stands."[101] The Court explained that,

> [t]he question then becomes whether the clear and firm decision of the Board should be remanded for a further hearing solely because the Board did not say why it rejected the test[-]supported conclusions of the claimant's psychiatrist. It would of course be a better record if the lay Board members could authoritatively state in a single statement in medical terms why they had not been persuaded by Dr. Pereira-Ogan's tests, diagnosis and conclusions. But perhaps they were not able to be that precise. The simple fact seems to be that they found the counterapproach and countertestimony of Dr. Vates to be persuasive.

---

[96] Opening Br. at 19.
[97] *Person-Gaines*, 981 A.2d at 1161.
[98] *Wyatt*, 81 A.3d at 1259 (Del. 2013) (citing *General Motors Corp. v. Freeman*, 164 A.2d 686, 689 (Del. 1960)).
[99] *Person-Gaines*, 981 A.2d at 1161.
[100] 453 A.2d 102 (Del. 1982).
[101] *Id.* at 105.

> The Board members accepted Dr. Vates' testimony, as enhanced by the employer's other medical testimony and by their evaluation of the claimant's credibility. As the triers of fact, they were entitled to do just that. No further clarification is required.[102]

No further clarification is required here. The Board was entitled to adopt Dr. Zaslavsky's testimony, bolstered by Claimant's testimony, over Dr. Rushton's and Dr. Matz's testimony. The record and summary of the evidence in the Board's decision shows that Dr. Zaslavsky based his opinion on numerous examinations of Claimant since March 2021, Claimant's full medical history, Claimant's subjective complaints, and objective testing. Claimant also provided live testimony consistent with Dr. Zaslavsky's opinion. In conclusion, the Court will not substitute its own judgment for that of the "specialized competency" of the Board given that Dr. Zaslavsky's opinion and Claimant's testimony constitute substantial evidence.[103]

### C. The left shoulder surgery was ripe for review.

Employer claims that the left shoulder surgery was not ripe for review because it was not at issue nor "formally alleged" as compensable.[104] The left shoulder is expressly included as an injury sustained from the September 11, 2020 work accident in both Claimant's petition to the IAB and the joint stipulation of facts.[105] Employer

---

[102] *Id.*; *see also Tristate Roofers*, 2018 WL 7021940, at \*6.
[103] *Tristate Roofers*, 2018 WL 7021940, at \*7.
[104] Opening Br. at 29.
[105] Joint Stipulation of Facts, *Logullo v. Unified Door and Hardware/Prevent Security*, IAB Hearing No. 1504830 (Oct. 23, 2024).

does not provide any authority supporting its position that the injury was not at issue. The Court agrees with Claimant that "the issue[] of compensability for medical treatment to Claimant's . . . left shoulder w[as] alleged at the time of the [h]earing and thus judiciable."[106]

## II.   IT WAS NOT AN ERROR FOR THE BOARD TO AWARD CLAIMANT TOTAL DISABILITY.

Next, Employer challenges the Board's award of total disability.[107] Employer avers that the Board incorrectly applied the standard for awarding total disability under *Gilliard-Belfast v. Wendy's, Incorporated*.[108] Additionally, Employer argues that the Board's decision to award total disability was not supported by substantial evidence.[109]

Employer claims that it was an error for the Board to award Claimant total disability under *Gilliard-Belfast*[110] because Claimant's treating physicians were required "to actually write work notes providing for total disability" and the Claimant must "actually rely upon such notes to refrain from working."[111] The Court disagrees.

---

[106] Answering Br. at 25.
[107] *Id.* at 30.
[108] 754 A.2d 251 (Del. 2000); Opening Br. at 30.
[109] Opening Br. at 31.
[110] 745 A.2d 251 (Del. 2000).
[111] Opening Br. at 30.

In *Gilliard-Belfast*, the claimant was denied "temporary total disability benefits while she was waiting to have that surgery, even though the treating physician had ordered her not to work."[112] The Delaware Supreme Court concluded that "[e]ven assuming that claimant could, if absolutely necessary, physically maintain a job of some sort, he nevertheless remains 'disabled' from the viewpoint of workmen's compensation so long as his treating physician insists that he remain unemployed."[113]

Claimant need not have a written note from his treating physician nor rely on a written note telling him not to work. All that is required is that the Board's decision be supported by substantial evidence that Claimant's treating physician insist he remain unemployed and that Claimant in fact remained unemployed as a result.

The Board's conclusion that Claimant is totally disabled is supported by substantial evidence. Claimant testified to the effects of his injuries on his ability to work. Dr. Zaslavsky insisted that Claimant is and will remain totally disabled because Claimant has continued to struggle with basic daily activities. The Board explained the testimony from both Claimant and Dr. Zaslavsky in the summary of the evidence and concluded that Claimant is totally disabled.

---

[112] 754 A.2d at 253.
[113] *Id.* at 254 (quoting *Malcom v. Chrysler Corp.*, 255 A.2d 706, 710 (Del. Super. 1969)) (cleaned up).

However, the Court agrees that the Board erred in finding that Claimant has been totally disabled since September 11, 2020. Both parties agree that the Joint Stipulation of Facts states that Claimant was totally disabled from October 28, 2020 through present.[114] Accordingly, the Court reverses only to correct the start date of total disability to October 28, 2020.

### III. THE BOARD AWARDED CLAIMANT ATTORNEYS' FEES THAT EXCEED THE STATUTORY MAXIMUM.

Finally, Employer posits that the Board committed reversible legal error by awarding Claimant attorneys' fees that exceeded 19 *Del. C.* § 2320(10)a.'s statutory maximum.[115] Claimant concedes that the Board erred in awarding Claimant $14,500.00 in attorneys' fees, but proffers that the appropriate attorneys' fee amount to $13,280.10 because the weekly average wage at the time was $1,328.01.[116]

The Court agrees that the Board erred by awarding Claimant attorneys' fees exceeding the statutory maximum. Under 19 *Del. C.* § 2320(10)a., the Board may order "reasonable attorneys' fee in an amount not to exceed 30 percent of the award or 10 times the average weekly wage in Delaware as announced by the Secretary of Labor at the time of the award, whichever is smaller," to an employee awarded workers' compensation.

---

[114] Joint Stipulation of Facts, *Logullo v. Unified Door and Hardware/Prevent Security*, IAB Hearing No. 1504830 (Oct. 23, 2024).
[115] *Id.* at 34.
[116] *Id.* at 27.

At the time of the Board's decision, the Board concluded that the average weekly wage calculated to $13,012.70, but awarded Claimant $14,500.00 in attorneys' fees. Consequently, the Board's award of attorneys' fees should not have exceeded $13,012.70.

## CONCLUSION

For the foregoing reasons, the Board's decision is **AFFIRMED** in part, **REVERSED** in part.

**IT IS SO ORDERED.**

*/s/ Calvin Scott*
Judge Calvin L. Scott, Jr.