**VOLKSWAGEN OF AMERICA, INC.,**
Defendant Below, Appellant,

v.

**William COSTELLO and Kathy
Costello, husband and wife,
Plaintiffs Below, Appellees.**

No. 306,2004.

Supreme Court of Delaware.

Submitted: March 30, 2005.
Decided: July 11, 2005.

John C. Phillips, Jr. (argued), James P. Hall, and Brian E. Farnan of Phillips,

Goldman & Spence, P.A., Wilmington, DE, for Appellant.

Louis J. Rizzo, Jr. (argued) and David J. Soldo of Reger & Rizzo, L.L.P., Wilmington, DE, for Appellees.

Before STEELE, Chief Justice, BERGER, and RIDGELY, Justices.

STEELE, Chief Justice:

In this slip and fall case, Volkswagen of America Inc. (VW) appeals a decision of the Superior Court denying its motion for judgment as a matter of law. VW claims that, based on the trial judge's earlier grant of partial summary judgment, the jury was precluded from finding that the company created the "dangerous condition" that caused Appellee William Costello's injuries. VW also contends that the trial judge erred by failing to instruct the jury on the law of premises liability applicable to out-of-possession landowners. Based on the competing evidence presented at trial of VW's possessory control of the accident site, we find that the trial judge properly denied VW's motion for judgment as a matter of law. But because the issue of possession was central to the jury's ability to find that the company owed a duty to Costello, we find that the trial judge erred by instructing the jury solely on the law applicable to in-possession landowners. Accordingly, we reverse and remand for a new trial.

## I.

Costello worked as an automobile mechanic for Transworld Port and Distribution Services Inc., a company that processed and stored vehicles that VW imported to the United States through the Port of Wilmington. To "apportion their respective obligations and liabilities," VW and Transworld entered into an agreement that, while recognizing

that VW "owns, leases, or is in possession" of the premises, grants Transworld and its employees a license "to occupy" VW's facility.[1] Pursuant to the agreement, Transworld "alone will be responsible on a day-to-day basis for managing the Facility and overseeing the performance of services."[2] Under the accompanying license, Transworld is directed to "preserve and maintain the Premises in a good, clean, undamaged condition."[3]

In 1996, VW refurbished the Vehicle Processing Center (VPC), a vehicle-maintenance area in which Costello worked. After dismantling the preexisting flooring, the company selected, financed, and installed a smooth, epoxy-type surface. In January 2001, after removing a vehicle from the VPC, Costello reentered the building on foot and slipped in a puddle of water that had accumulated on the floor. Costello suffered injuries as a result of the fall.

In April 2002, Costello and his wife filed an action against VW in the Superior Court, seeking compensation for the injuries he sustained as a result of the fall. In response, VW moved for summary judgment, contending that it did not maintain possession or control over the premises where Costello fell and thus could not be held liable for Costello's injuries.

In a July 2003 bench ruling, the trial judge granted VW partial summary judgment. Citing the parties' submissions, she found that VW did not actively control the "method and manner of work" performed

by Transworld.[4] But the trial judge appeared to deny the motion to the extent it sought judgment on the issue of possession:

> With respect to possessory control, it is a little bit more troublesome to me. It is a closer question [than an] act of control only because of the license, not because of any of the undisputed factual testimony. Paragraph Eight of the license, to use real property, talks about alterations and additions, and that they cannot be made without prior written consent of Volkswagon.... [T]he Court sees that analysis [goes] to the landlord-tenant [analogy].... [T]hat is sufficient to impose liability on Volkswagon in this instance.[5]

Based on this analysis, the trial judge then stated: "So I'm going to deny the motion for summary judgment with respect to the possessory control. I just don't find sufficient genuine issues of material fact on that."[6]

While these remarks appear contradictory, the trial judge unequivocally found that Costello could proceed to trial on a single issue: "whether Volkswagon beared [sic] a duty insofar as the creation of a hazardous condition."[7] Following a January 2004 trial, a jury concluded that the company did, finding VW's negligence responsible for seventy percent of Costello's injuries and Costello thirty percent at fault. VW then moved for judgment as a matter of law, which the trial judge denied in a June

1. *See* Port Services and Vehicle Processing Agreement, Recitals B, D, F (Dec. 12, 2000), at 1.

2. *Id.* at 7.

3. *See* License to Use Real Property, Schedule A (Dec. 19, 2000), at 1.

4. *Costello v. Volkswagon of America Inc.,* Del.Super., C.A. No. 02C–04–165 (July 22, 2003), trans. at 2.

5. *Id.* at 3.

6. *Id.*

7. *Id.* at 4.

2004 order.[8] VW now appeals, claiming, among other arguments, that the trial judge erred by denying its motion for judgment as a matter of law and by failing to instruct the jury on the standards applicable to out-of-possession landowners.

## II.

### A.

█ VW first claims that the trial judge erred by denying its motion for judgment as a matter of law. The company argues that the trial judge, despite her contradictory ruling, removed any basis for a jury to find VW liable when she granted summary judgment on the issues of control *and* possession. As a result, VW contends that the jury was precluded as a matter of law from considering whether the company created a "dangerous condition" by either installing or failing to properly maintain the flooring surface on which Costello slipped.

█ Generally, a landowner who has neither possession nor control of the leased premises is not liable for injuries to third persons.[9] Thus, "a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."[10] But an exception arises, justifying the imposition of liability on an out-of-possession owner, where the owner "retains control of portions of the land which the lessee is entitled to use."[11] Under these circumstances, it is necessary to show actual control because "once a landlord leases property, he generally relinquishes both control and possession of the leased area to the lessee."[12] We review a trial judge's denial of a motion for judgment as a matter of law to determine "whether the evidence and all reasonable inferences that can be drawn therefrom, taken in a light most favorable to the nonmoving party, raise an issue of material fact for consideration by the jury."[13] If under "any reasonable view of the evidence" the jury could have found for the nonmoving party, the trial judge's ruling must stand.[14]

---

**8.** See *Costello v. Volkswagon of America Inc.,* Del.Super., C.A. No. 02C-04-165 (June 15, 2004) (ORDER) ("Viewing the evidence in the light most favorable to plaintiffs, there is substantial evidence to support the verdict in favor of plaintiffs. A new trial is not warranted because the verdict was not against the weight of the evidence and was not a miscarriage of justice.").

**9.** See, e.g., *Craig v. A.A.R. Realty Corp.,* 576 A.2d 688, 694 (Del.Super.Ct.1989), *aff'd* 571 A.2d 786 (Del.1990); THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 1241 (1981).

**10.** RESTATEMENT (SECOND) OF TORTS, § 355 (1965) [HEREINAFTER RESTATEMENT]. Consistent with the permissive scope of the comments to Section 355, we read the terms *lessor* and *lessee* broadly to apply to a party's possessory interest in land. See *id.* cmt. (a). See also Osborne M. Reynolds Jr., *Licensees In Lan-* *doccupiers' Liability Law—Should They Be Exterminated Or Resurrected?,* 55 OKLA. L. REV. 67, 67 (2002) ("Tort law regarding *landoccupiers' liability* in the United States has long been organized around three categories of entrants onto property—trespassers, licensees, and invitees—to whom the landoccupier owes varying duties.") (emphasis added). Thus, although VW granted Transworld a license to use real property, the former's status in this case revolves around the extent to which it holds a possessory interest.

**11.** *Craig,* 576 A.2d at 694.

**12.** *Argoe v. Commerce Square Apts. Ltd. P'ship,* 745 A.2d 251, 255 (Del.Super.Ct.1999).

**13.** *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.,* 866 A.2d 1, 7 (Del.2005).

**14.** *Mazda Motor Corp. v. Lindahl,* 706 A.2d 526, 530 (Del.1998).

■ Possession and control are related, but nonetheless jurisprudentially distinct, concepts.[15] Thus, it is possible for a landowner to retain some modicum of possession, but relinquish all control to a lessee or another party.[16] When she granted partial summary judgment in favor of VW, the trial judge found as a matter of law that Costello failed to present any evidence that VW controlled the site of the injury and therefore exercised no "actual control" over the VPC.[17]

The trial judge, however, found the issue of possession to be "more troublesome." She noted that the parties' agreement contemplated VW's role in approving and implementing structural changes to the facility, and that the agreement required preapproval before any Transworld-initiated changes took place. Despite her isolated statement to the contrary, the trial judge's reasoning on the issue of whether VW created a dangerous condition indicates that the issue of possession remained a question for the factfinder.

As the trial judge framed the issues for decision, the jury could properly find that VW owed a duty to Costello and that it negligently breached that duty, causing Costello's injuries. Although the trial judge removed the issue of control from the jury by granting partial summary judgment in VW's favor, thereby eliminating the application of the out-of-possession-landowner exception, the jury, if it found that VW did in fact retain possession, could still properly find that VW breached a duty owed to Costello and impose liability. It is only when dangerous conditions arise "after a lessee has taken possession" that a landowner can be absolved from liability.[18]

Because the extent of VW's possessory interest in the VPC, taken in a light most favorable to Costello, demonstrates an issue of fact appropriate for jury resolution, we find that the trial judge did not err by denying VW's motion for judgment as a matter of law. Although we find no reversible error on this point, we note that the trial judge's instructions to the jury did little to help them understand their factfinding role in this case. This concern guides our analysis of VW's remaining contentions.

### B.

■ VW next argues that the trial judge erred by instructing the jury on the standards of premises liability for landowners in possession and by failing to instruct the jury on the legal standards applicable to out-of-possession landowners. According to VW, the company never retained possession of the VPC. As a result, VW claims that the trial judge submitted an incorrect statement of law to the jury. Since VW withdrew its exception to the jury instructions,[19] we review for plain er-

---

15. *Cf.* 62A Am. Jur. 2D *Premises Liability* § 741 ("The law does not ordinarily impose a duty of care upon an occupier of land beyond the area over which the occupier has possession *or* control.") (emphasis added)

16. *See, e.g., Argoe,* 745 A.2d at 255 ("[I]t will not be said that the owner/landlord has actual control of the premises where he reserves only some limited rights, such as the right to inspect or the right to inspect coupled with the right to retake.").

17. *See Costello,* C.A. No. 02C–04–165 (July 22, 2003), trans. at 3 ("I just don't believe it is even close, given the undisputed facts set forth in Volkswagon's papers about the hierarchy within Transworld....").

18. Restatement § 355.

19. *See* Trial Tr. at 144–45 (raising and then abandoning objection to jury instructions).

ror.[20] In the jury instruction context, plain errors "undermine the jury's ability to intelligently perform its duty in returning a verdict."[21] Thus, "an improper jury instruction may amount to plain error despite a defendant's acceptance of it."[22]

■ The trial judge instructed the jury, in pertinent part, that:

A businessowner-landowner owes a duty to the public to see that the parts of the premises ordinarily used by customers are kept in a reasonably safe condition. With this duty, the businessowner-landowner is responsible for injuries that are caused by defects or conditions that the businessowner-landowner had actual notice of or that could have been discovered by reasonably prudent inspection.[23]

The trial judge also charged the jury on a provision of the New Castle County building code that requires that "walking surfaces of the means of egress shall have a slip resistant surface and be securely attached."[24]

The instructions, in essence, asked the jury to determine whether VW, by installing the new flooring surface and by allowing a pool of water to accumulate on it, had created a "dangerous condition" in the VPC. No instruction, however, addressed the question that the issues for the jury to resolve presume—that VW retained possession of the VPC. While the evidence indicates that VW retained some possessory interest in the facility and actually installed the flooring that gave rise to the accident, the evidence also supports the conclusion that VW was not responsible for maintaining the condition of the flooring.

This conflict in the record explains why the trial judge found as a matter of law that VW, while relinquishing all actual control of maintenance to Transworld, did not also conclusively release its possessory control of the site of the injury. That question was for the jury to resolve.

■ The trial judge, as a result, mistakenly charged the jury solely on the general duties of landowners. She did not inform the jury that those landowners who are out of possession are treated differently—that a landowner relinquishing its possessory interests to another cannot be held liable for dangerous conditions that arise "after the lessee has taken possession." For the jury to conclude that VW owed any duty to Costello, it must first resolve the interplay between VW's installation and Transworld's maintenance of the flooring surface. But the jury could not, on the basis of the instructions the trial judge gave, reach the question of whether VW owed a duty until it first determined the extent of the company's continued possessory interest in the VPC. Only then could it properly resolve whether the dangerous condition arose because of the failure to maintain the surface where Costello fell or from the nature of the flooring surface itself.

■ As charged, the instructions assumed that VW owed a duty under either factual scenario and, consequently, automatically led to a finding that VW negligently caused Costello's injuries. Our premises-liability law, however, imposes a duty only on landowners that either retain possession or create dangerous conditions before relinquishing possession. Only by

**20.** *Culver v. Bennett,* 588 A.2d 1094, 1096 (Del.1991).

**21.** *Id.*

**22.** *Bullock v. State,* 775 A.2d 1043, 1054 (Del. 2001).

**23.** Tr. Trans. at 121 (punctuation altered).

**24.** *Id.* at 123, *referencing* New Castle County Building Code § 1033.2.6 (2004).

answering these preliminary questions could the jury decide whether VW owed Costello a duty, and if so, whether the company breached that duty. Because the instructions in this case prevented the jury from determining whether the alleged dangerous condition arose before or after VW ceded possession to Transworld, or whether VW did so at all, the jury could not "intelligently perform" its factfinding function. Accordingly, we find that the trial judge erred by failing to instruct the jury on the law applicable to out-of-possession landowners.

### III.

For these reasons, the judgment of the Superior Court is **REVERSED**. We **REMAND** for a new trial consistent with this Opinion.