# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

RICHARD CHASE, and his wife, )
MELANIE CHASE, )
                         )
     Plaintiffs, )
             v. )     C.A. No. N15C-10-162 CLS
WAP CLEVELAND AVENUE, )
L.L.C., ROYAL IMPORTS INC. )
d/b/a NEWARK TOYOTAWORLD )
                         )
Defendants/Third-Party Plaintiffs, )
            v. )
MARTIN NEWARK DEALERSHIP, )
INC., d/b/a MARTIN HONDA, )
                         )
Third Party Defendant. )

Submitted: January 31, 2017
Decided: May 19, 2017

On Defendants' Motion for Summary Judgment.
**DENIED.**
**ORDER**

Elizabeth Lewis, Esquire, and Thomas Crumplar, Esquire, Jacobs & Crumplar, P.A., Wilmington, Delaware, Attorney for Plaintiffs Richard and Melanie Chase.

Mary E. Sherlock, Esquire, Weber Gallagher Simpson Stapleton Fires & Newby, LLP, Wilmington, Delaware, Attorney for Defendants/Third-Party Plaintiffs WAP Cleveland Avenue, LLC and Royal Imports Inc. d/b/a Newark Toyota World.

Melissa L. Rhoads, Esquire, and Jason J. Cummings, Esquire, Tigh & Cottrell, P.A., Wilmington, Delaware, Attorney for Third Party Defendant, Martin Newark Dealership d/b/a Martin Honda.

**SCOTT, J**

## Background

Defendant's WAP Cleveland Avenue, LLC (hereinafter "WAP") and Royal Imports Inc. d/b/a Newark ToyotaWorld (hereinafter "Royal") filed a Motion for Summary Judgment on November, 18 2016. Plaintiffs Richard Chase ("Mr. Chase") and his wife Melanie Chase filed a response on January 31, 2017. Defendant Martin Newark Dealership d/b/a Martin Honda (hereinafter "Martin Honda") did not file a response. A pre-trial conference was held on May 15, 2017. At the pre-trial conference the parties informed the Court that Defendants Nucar Newark Body Shop and Diamond Motor Sports, Inc. were no longer in the case. Further, the parties agreed that the case caption should read "Royal Imports, Inc. d/b/a Newark ToyotaWorld."

## Facts

On June 1, 2013, Royal entered into a Parking License Agreement (hereinafter "Agreement") with Martin Honda. Under this Agreement, Martin Honda paid Royal to use a designated portion of property that Royal leases from the WAP. The Agreement allows Martin to store 100 new and/or used cars on the property. WAP is not a party to this agreement. On December 11, 2013, Mr. Chase, a Martin Honda employee, parked his vehicle on the property subject to the Agreement. As he was walking from the lot onto the adjoining public roadway,

Christopher Lane, he slipped and fell on ice and snow. The pertinent portion of the Agreement states:

> The Fee does not include customary and ordinary costs and expenses associated with the routine maintenance of the Licensed Property, including but not Limited to, costs for debris removal, snow plowing and restriping (collectively, the "Routine Maintenance") which shall be billed by Licensor to Licensee on a quarterly basis and paid by Licensee to Licensor within thirty (30) days of receipt. Any other maintenance, repairs and/or replacements of the Licensed Property that would be characterized as a capital improvement, including, by way of example and not of limitation, resealing and repaving of the Licensed Property, shall be performed by and the responsibility of the Licensor (collectively the "Long Term Maintenance"). Licensor shall provide Licensee with reasonable prior written notice of any Routine maintenance of Long Term Maintenance (collectively, the "Maintenance") to be performed on the Licensed Property, Licensee agrees to reasonably cooperate with Licensor in connection with any Maintenance on the Licensed Property and shall, if necessary in order to accomplish the Maintenance, find reasonable alternative parking arrangements outside of the Licensed Property for the period required to perform any Maintenance.

The lease agreement between WAP and Royal was not proffered during Discovery.

## Parties' Contentions

Defendants WAP and Royal contend that there is no genuine issue of material fact in this case and summary judgment is appropriate. WAP contends that although they are the owner of the property where Mr. Chase was injured, they were neither the "possessor" nor the "Licensor." WAP also claims that Mr. Chase was on the property for the sole benefit of Martin Honda, not to benefit WAP's

business.  Similarly, Royal claims that the use of the property solely benefited Martin Honda's business and there is no evidence that Royal "invited" Mr. Chase onto the property.  Royal also argues that because Martin Honda is a licensee, Mr. Chase is also a licensee because he was Martin Honda's employee.  Royal also claims that the Complaint does not allege willful or wanton conduct on the part of Royal.

On the other hand, Plaintiffs contend that Mr. Chase is a business invitee because he was rightfully on the lot when he was injured, and both WAP and Royal owed Mr. Chase a duty to exercise reasonable care in making the property safe. Plaintiffs claim that Mr. Chase was a business invitee pursuant to the Restatement (Second) of Torts because Mr. Chase was invited to enter on the land for a purpose directly or indirectly related to the business dealings with the possessor of the land.  Plaintiffs claim that this is evidenced by the fact that Martin Honda directed Mr. Chase to park in the designated lot, and Royal received a fee in exchange for allowing Martin Honda to use the property. Plaintiffs argue that pursuant to Section 26-3 of the City of Newark's Municipal Code, the "property owner", in this case WAP, is required "to remove all snow or ice from the sidewalk abutting such property from the time the snow ceases to fall."  Plaintiffs also claim that as part of the Agreement between Royal and Martin Honda, Royal was to pay for the snow removal and seek reimbursement from Martin Honda.  Finally,

Plaintiffs contend that there is an issue of fact as to joint control of the property in question between WAP and Royal. Plaintiffs state that the Agreement between Martin Honda and Royal places responsibility on Royal to take care of snow removal, and then subsequently bill Martin Honda for the removal. However, Plaintiffs claim that the Agreement requires that any inquiries pertaining to the Agreement should be directed to Warren A. Price, the principle of WAP. Because of this clause, Plaintiffs argue that there is an issue regarding joint control of the property. Additionally, Plaintiffs state that Martin Honda had no responsibility for the "Routine Maintenance" or "Long Term Maintenance" pursuant to the Agreement.

## Standard

The Court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[1] The moving party bears the initial burden of showing that no material issues of fact are present.[2] Once such a showing is made, the burden shifts to the non-moving party to demonstrate that there are material issues of fact in dispute.[3] In considering a

---

[1] Super. Ct. Civ. R. 56(c); *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).
[2] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[3] *Id.* at 681.

motion for summary judgment, the Court must view the record in a light most favorable to the non-moving party.[4] The Court will not grant summary judgment if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law.[5]

## Discussion

Under Delaware law, a plaintiff must demonstrate that a particular defendant owed her a duty of care, breached that duty, and the breach was the proximate cause of her injuries.[6] The Court determines whether a duty exists, and it "is entirely a question of law, to be determined by the body of statutes, rules, principles and precedents which make up the law."[7] Generally, landowners have "an affirmative duty to keep premises safe from hazards of ice-and snow-related accumulation," and they are "permitted to await the end of a storm and a reasonable time thereafter to remove ice and snow from an outdoor entrance walk, platform, or steps."[8] Pertinent to this case, the City of Newark's Code of Ordinances, Section 26-3(a) provides that the "owner, tenant, or occupant of every building or lot within the city, or owner, claimant, agent, or person having same in

---

[4] *Burkhart*, 602 A.2d at 59.

[5] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *Phillip-Postle v. BJ Prods., Inc.*, 2006 WL 1720073, at *1 (Del. Super. Ct. Apr. 26, 2006).

[6] *Patton v. 24/7 Cable Co., LLC*, 2016 WL 6272552, *2 (Del. Super. Aug. 31, 2016).

[7] *Id.* (citations omitted).

[8] *Laine v. Speedway, LLC*, 2016 WL 5946491, at *2 (Del. Super. Oct. 13, 2016)(citing *Cash v. E. Coast Prop. Mgmt., Inc.,* 2010 WL 4272925, at *2 9Del. Oct. 29, 2010). The Court notes that this duty applies to business invitees. *See Elder v. Dover Downs, Inc.*, 2012 WL 2553091, at *4 (Del. Super. July 2, 2012).

charge or control when the same is not tenanted or occupied, or the owner of any property which is occupied by multiple businesses or multiple dwelling units, *shall remove all snow or ice from the sidewalk abutting such property* within 24 hours from the time the snow ceases to fall."[9] There is no claim under Delaware's continuing storm doctrine in the present case. Rather, the main issue before the Court is which parties, if any, owed Mr. Chase a "duty" to remove the ice and snow where Mr. Chase fell. To properly answer this question, the Court must assess Mr. Chase's status on the premises in order to determine the applicable duty of care. Because there are multiple parties in this action, and each party's relationship to Mr. Chase differs, the Court will assess the Motion per each Defendant individually.

## WAP Cleveland Avenue

The Court is not persuaded by WAP's argument that no genuine issue of fact exists because WAP was neither the "possessor" nor the Licensor. The general rule concerning leased premises is that "a landowner who has neither possession nor control of the leased premises is not liable for injuries to third persons."[10] Thus, "a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken

---

[9] *See* The City of Newark's Municipal Code Section 26-3 (emphasis added).
[10] *Volkswagen of America, Inc. v. Costello* 880 A.2d 230, 233 (Del. 2005).

possession."[11] However, "an exception arises, justifying imposition of liability on an out-of-possession owner, where the owner 'retains control of portions of the land which the lessee is entitled to use'."[12] Further, "it is necessary to show actual control because 'once a landlord leases property, he generally relinquishes both control and possession of the leased area to the lessee'."[13] At this point in the litigation, when viewing the facts in a light most favorable to Plaintiffs, summary judgment is inappropriate. Plaintiffs' case a very similar to the Delaware Supreme Court case, *Volkswagen of America, Inc. v. Costello.*[14] In *Costello*, the plaintiff worked at Transworld Port and Distribution Services Inc. as an automobile mechanic.[15] Transworld processed and stored vehicles for Volkswagen ("VW") imported through the Port of Wilmington.[16] VW and Transworld entered into an agreement that granted Transworld a license to "occupy" the property, and the agreement stated that VW "owns, leases, or is in possession" of the said property.[17] Subsequently in 1996, VW installed new floors in the area where the plaintiff worked,[18] and in 2001 the plaintiff slipped in a puddle of water on these floors.[19]

---

[11] *Id.*
[12] *Id.* at 233 (citing *Craig v. A.A.R. Realty Corp.,* 576 A.2d 688, 694 (Del. Super. 1989)).
[13] *Id.* (citing *Argoe v. Commerce Square Apts., Ltd. P'ship*, 745 A.2d 251, 255 (Del. Super. 1999)).
[14] 880 A.2d 230 (Del. 2005).
[15] *Id.* at 231.
[16] *Id.*
[17] *Id.* at 231-32.
[18] *Id.* at 232.
[19] *Id.* at 232.

This Court granted partial summary judgment because it found that "VW did not actively control the 'method and manner of work' performed by Transworld," but denied the motion on the issues of possession.[20] The Supreme Court held the issue of possession remained a question for the factfinder, and not the trial judge.[21] The court noted that "[p]ossession and control are related, but nonetheless jurisprudently distinct concepts,"[22] and "it is possible for a landowner to retain some modicum of possession, but relinquish all control to a lessee or another party."[23] Here, there are issues of fact as to whether WAP was in actual control of the property in question. The lease between WAP and Royal was not turned over during discovery, and the Court is limited to the facts in the record. Under these set of facts, when viewed in a light most favorable to the Plaintiffs, the Court cannot determine whether WAP was in actual control of the property. Therefore, WAP's Motion for Summary Judgment is **DENIED.**

**Defendant Royal Imports d/b/a Newark ToyotaWorld**

Royal argues that Mr. Chase was a licensee on the property because of the licensor/licensee relationship established through the Agreement between Royal and Martin Honda. However, Plaintiffs argue that Mr. Chase was a business invitee under the Restatement (Second) of Torts because he "was invited to enter

---

[20] *Id.*
[21] *Id.* at 234.
[22] *Id.* (citations omitted).
[23] *Id.* (citing *Argoe*, 745 A.2d at 255).

or remain on the land for a purpose directly or indirectly connected with the business dealings with the possessor of the land." The Court does not agree with Plaintiffs' assertion. The relationship between Royal and Martin Honda is established through the "Parking License Agreement." The licensing agreement between Royal and Martin is "solely and exclusively for parking for no more than 100 motor vehicles, and for no other purposes whatsoever." From the outset, there is an issue of fact whether Mr. Chase was on the property pursuant to the permitted use under the Agreement. Setting this issue aside, Mr. Chase cannot be classified as a business invitee of Royal. A licensee is defined as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent."[24] An invitee, on the other hand, is defined in Section 332 of the Restatement as "either a public invitee or a business visitor."[25] A "business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."[26] A key distinction pertinent to this case is the difference between an invitation and permission. The comments of the Restatement distinguish the terms. Section 332, comment b, states that "[a]n invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which

[24] Restatement (Second) of Torts § 330.
[25] Restatement (Second) of Torts § 332(1).
[26] Restatement (Second) of Torts § 332(b).

justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so. Any words or conduct of the possessor which lead or encourage the visitor to believe that his entry is desired may be sufficient for the invitation."[27]

Comment (e) of the Restatement suggests that there are two forms of "business visitors."[28] The first type "includes persons who are invited to come upon the land for a purpose connected with the business for which the land is held open to the public, as where a person enters a shop to make a purchase, or to look at goods on display."[29] The record before the Court suggests that Mr. Chase does not fall into this category of business invitee as he is an employee of Martin Honda, and was not on the land for a purpose connected with Royal's business. The second type of business visitor under the Restatement "includes those who come upon the land not open to the public, *for a purpose connected with business which the possessor conducts upon the land*, or for a purpose connected with their own business which is connected with any purpose, business or otherwise, for

---

[27] Restatement (Second) of Torts § 332 cmt (b). *See also Malin v. Consolidated Rail. Corp.*, 438 A.2d 1221, 1224 (Del. 1981); *Lum v. Anderson,* 2004 WL 772074, at *4-5 (Del. Super. Mar. 10, 2004).

[28] *See* Restatement (Second) of Torts § 332 cmt (e). The Court notes that Delaware courts refer to business visitors as "business invitees."

[29] *Id.*

which the possessor uses the land."[30] For example, "a truck driver from a provision store who enters to deliver goods to a private residence is a business visitor; and so is a workman who comes to make alterations or repairs on land used for residence purposes."[31] Delaware law suggests that the "distinguishing factor between a licensee and an invitee is whether the possessor of the property receives any benefit from the use of the property by the licensee or the public invitee."[32] Similarly, "[a]nother key factor in evaluating whether or not a party is an invitee or a licensee is if their status on the possessor's property is related to possessor's business on that property."[33] The Court finds that Mr. Chase was not a business invitee of Royal. Royal does not confer a benefit from the use of the property by Mr. Chase, and there are no facts in the record to indicate that he was on the property for a reason related to Royal's business. However, there are multiple issues of fact in this case. First, it is an issue of fact as to whether Royal was the "possessor" of the property where Mr. Chase was injured. Although Royal gave Martin Honda a license[34] to enter the property in question through the agreement, a

---

[30] *Id.* (emphasis added).

[31] *Id.*

[32] *Short-Karr v. RB Gyms, Inc.*, 2015 WL 7776734, at *3 (Del. Super. Nov. 20, 2015)(citations omitted).

[33] *Id.* (citing *Davenport v. D & L Construction, LLC,* 2015 WL 4885069, at *3 (Del. Super. Aug. 14, 2015)).

[34] "A license amounts to a permissive use granted by the owner of a property to another which is terminable at the will of the owner." *Kuhns v. Bruce A. Hiler Delaware QPRT*, 2014 WL 1292860, n. 187 (Del. Ch. Mar. 31, 2014)(citing *Coker v. Walker,* 2013 WL 1858098, at *3 (Del. Ch. May 3, 2013)).

question of fact exists whether Mr. Chase was on the property within the permitted scope of the Agreement. Finally, Under Delaware common law, "the duty owed by industrial and *commercial* owners and occupiers of land to trespassers and guests without payment," also known as a licensee, is "to refrain from willful or wanton conduct."[35] However, in the present case, the Agreement sets forth the terms regarding duty to remove snow and the City of Newark requires that the "owner, tenant, or occupant . . . shall remove all snow or ice from the sidewalk abutting such property." Thus, there is an issue of fact as to which party, pursuant to the agreement, and the city ordinance, was responsible for the removal of ice and snow on the property. For the aforementioned reasons, Royal's Motion for Summary Judgment is hereby **DENIED**.

**IT IS SO ORDERED.**

**/s/ Calvin L. Scott**

**Judge Calvin L. Scott, Jr.**

---

[35] *Simpson v. Colonial Parking, Inc.*, 36 A.3d 333, 335 (Del. 2012)(citation omitted).