## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SHARIDA TOLLIVER,  )
          Plaintiff  )
           )
         v.  )     C.A. No.: N23C-03-072 SSA
           )
CALVIN L. MUSSER III and  )
JOANNE N. MUSSER,  )
         Defendants.  )

Submitted: January 7, 2026
Decided: January 28, 2026

## <u>MEMORANDUM OPINION</u>

In their Motion for Summary Judgment, Defendants Calvin and Joanne Musser seek to limit their duty to Plaintiff Sharida Tolliver, their former tenant, by shifting responsibility for an alleged defect on their rental property. Mrs. Musser also contends she and Plaintiff had no relationship creating a duty of care. However, both Defendants qualify as landlords under the Residential Landlord-Tenant Code; they thereby owed Plaintiff a duty to maintain and repair the purported defect. Further, an issue of material fact exists regarding Defendants' control and notice. For the reasons that follow, the Motion for Summary Judgment is Denied.

## *Factual Background*[1]

Plaintiff avers that in June of 2022 she suffered injuries when she tripped and fell on a loose board outside of her rental unit's front door; she broke both of her ankles and required multiple surgeries.[2]  The front door was her sole accessway to the unit.[3]  At the time, Plaintiff was Defendants' tenant.  She alleges she repeatedly complained to them about the loose board.

The parties' landlord-tenant relationship began via rental agreement in March 2018.[4]  Through the State Rental Assistance Program ("SRAP"), the Delaware State Housing Authority ("DSHA") paid rental assistance on Plaintiff's behalf. Defendants entered a separate agreement (the Housing Assistance Payments, or "HAP," contract) with DSHA.[5]  Both the lease and HAP contract mandated that Defendants "maintain the contract unit and premises in accordance with the housing quality standards (HQS)."[6]  To that end, the HAP contract authorized inspection of "the contract unit and premises at such times as DSHA determines necessary, to

---

[1] The Court has considered these facts in the light most favorable to Plaintiff, as she is the non-moving party.  *See Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992) *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

[2] Compl., D.I. 1, at 1; Pl. Resp. in Opp'n to Defs. Mot. for Summ. J., D.I. 56, Tolliver Aff. at 4. The Court refers to the affidavit attached to Plaintiff's response as the "responsive affidavit."

[3] Tolliver Aff., D.I. 56, at 2.

[4] Defs. Mot. for Summ. J., D.I. 54, at 2.  Mrs. Musser is not a signatory; however, for reasons discussed further below, the Court treats both her and Mr. Musser as co-owners of the property and thus former landlords to Plaintiff.

[5] D.I. 56, Ex. A, at 6.

[6] *Id.* at 14.  *See also id.* at 6.  The HQS are "[t]he minimum quality standards for housing assisted under [SRAP]…."  *Id.*  The parties do not further illustrate these standards.

ensure that the unit is in accordance with the HQS."[7]  "[I]f the contract unit d[id] not meet the HQS," DSHA would withhold payments "unless the owner correct[ed] the defect … and DSHA verifie[d] the correction."[8]

According to Plaintiff, Defendants were unresponsive to her requests for repair.  At the start of her lease, "the entrance outside the front door was assembled as a ramp"; a loose board on the landing "would flex down when stepped on, which resulted in the next board sticking up…."[9]  A DSHA inspection flagged hazards in that area.[10]  Plaintiff fell on the ramp several times.[11]  She eventually communicated with a third party "to have her contact [Mr. Musser] and [DSHA] to get them to … repair the wood on the landing…."[12]  Mr. Musser then removed the ramp; however, Plaintiff states, "he did not fix the loose board…."[13]  After Plaintiff's mother tripped on it, Plaintiff contacted Mrs. Musser and "told [her] about the loose board … and asked her when it would be fixed.  She ignored [Plaintiff's] complaint and asked when she could pick up the rent."[14]

---

[7] *Id.* at 15, 18–19.
[8] *Id.* at 15.
[9] Tolliver Aff., D.I. 56, at 2.
[10] D.I. 56, Ex. B, at 23–26.  These inspections flagged "violations or repairs needed."  One report, dated 12/03/2019, notes "ramp boards [raised] - Trip [hazard];" an earlier report, dated 01/24/2019, cites to "HQS6.2" and Code Section 4113j regarding the porch.
[11] D.I. 56, Ex. C, at 29.
[12] Tolliver Aff., D.I. 56, at 3.
[13] *Id.*
[14] *Id.*

Plaintiff contends that Defendants knew, or should have known, of the defective board yet failed to address it.[15] Central to the parties' summary judgment dispute is Defendants' duty. The parties address four issues: (1) Defendants' actual control of the leased premises; (2) the defect's development after Plaintiff's occupation; (3) the visible danger of the defect; and (4) Mrs. Musser's duty.

### *Standard of Review on a Motion for Summary Judgment*

The Court renders summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits[] … show that there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law."[16] "The movant must show the record fails to establish an essential element for which the nonmoving party will bear the burden of proof at trial."[17] In other words, "[s]ummary judgment will result where the party bearing the burden of proof fails to adduce sufficient essential claim

---

[15] D.I. 1, at 1. Plaintiff avers that Defendants failed to: repair or maintain the board, protect her from it, warn her of it, and adhere to statutory requirements. *Id.* at 1–2.

[16] Super. Ct. Civ. R. 56(c).

[17] *Anderson v. State Farm Fire & Cas. Co.*, 2025 WL 2684094, at *6 (Del. Super.) (citations omitted).

elements."[18]  However, as already established, "[t]he record must be considered 'in the light most favorable to the nonmoving party.'"[19]

## *Negligence Action*

For "a negligence claim, a plaintiff must prove that: a defendant owed her a duty of care; the defendant breached that duty; and the breach proximately caused an injury."[20]  This dispute's focus, duty, "is an issue of law for the Court to decide."[21]  Duty is relational;[22] it involves "whether 'such a relationship exists between the parties that the community will impose a legal obligation upon one [for] the benefit of the other'."[23]

## *Landlord Duties Under Delaware Law*

To start, "[t]he type of duty a landlord owes to an individual depends on the individual's status on the land."[24]  Plaintiff is a tenant and business invitee.[25]  "A

---

[18] *Heaps v. Luna*, 2012 WL 7760048, at *3 (Del. Super.) *citing Talmo v. Union Park Auto.*, 38 A.3d 1255, at *2 (Del. 2012).  If the supporting evidence for a claim is "such that no reasonable jury could find in [the plaintiff's] favor[,]" then "[s]ummary judgment is appropriate…." *Amalfitano for Est. of Smith v. Cocolin*, 2017 WL 3051480, at *2 (Del. Super.) (citations omitted).  *See also Alcantara v. Cavalier Grp., Inc.*, 2019 WL 4187542, at *3 (Del. Super.).

[19] *Anderson*, 2025 WL 2684094, at *6 (citations omitted).

[20] *Doe 30's Mother v. Bradley*, 58 A.3d 429, 447 (Del. Super. Ct. 2012) *citing Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011).

[21] *Heaps*, 2012 WL 7760048, at *3 *quoting Kandravi v. J. & J Corp.*, 1991 WL 68960, at *1 (Del. Super.).

[22] *Brandt v. Rokeby Realty Co.*, 2004 WL 2050519, at *2 (Del. Super.) *quoting Kuczynski v. McLaughlin*, 835 A.2d 150, 153 (Del. Super. Ct. 2003).

[23] *Brandt*, 2004 WL 2050519, at *2 *quoting Naidu v. Laird*, 539 A.2d 1064, 1070 (Del. 1988).

[24] *Ambrosio v. Drummond*, 2017 WL 1437314, at *2 (Del. Super.).

[25] D.I. 56, at 1; D.I. 1, at 1.  Delaware courts vary on whether a tenant also qualifies as a business invitee.  In *Ambrosio*, the Court concluded that the plaintiff-tenant was "not a business invitee because her presence on the land was not directly or indirectly connected with the business

landlord's duties to their tenants arise from the Delaware Landlord Tenant Code, the lease between the two parties, and common law."[26] "Generally, a landowner has the duty to exercise reasonable care to keep the premises safe for business invitees."[27] Under the common law, if "the landlord has retained 'actual control' of the premises[,]"[28] then they must "maintain[] … [the] premises in a reasonably secure and physically safe condition."[29] But without actual control or "an agreement to the contrary, a landlord has no duty to maintain or repair a demised premises…."[30]

Relevant to this decision  are two additional common-law limitations on landlord responsibility.  First, an out-of-possession landlord is not liable for hazards arising after the lessee's possession.[31]  However, "an exception arises, justifying the imposition of liability on an out-of-possession owner, where the owner 'retains

dealings of Defendant." *Ambrosio*, 2017 WL 1437314, at *3.  Conversely, the parties in *Alcantara* treated the plaintiff as both, and the Court employed both frameworks.  *Alcantara v. Cavalier Grp., Inc.*, 2019 WL 4187542, at *2 (Del. Super.).

[26] *Ambrosio*, 2017 WL 1437314, at *3.  The Court hereinafter refers to the Residential Landlord-Tenant Code as the "Code."  *See generally* Residential Landlord-Tenant Code, 25 *Del. C.* §§ 5101–907.

[27] *Argoe v. Com. Square Apartments Ltd. P'ship*, 745 A.2d 251, 254 (Del. Super. Ct. 1999) *citing Hamm v. Ramunno*, 281 A.2d 601, 603 (Del. 1971).

[28] *Scott v. Acadia Realty Tr.*, 2009 WL 5177152, at *5 (Del. Super.) *quoting Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 694–95 (Del. Super. Ct. 1989).

[29] *Id. quoting* 62 Am. Jur. 2d *Premises Liability* § 16 (2005).

[30] *Ford v. Ja-Sin*, 420 A.2d 184, 186 (Del. Super. Ct. 1980) (citations omitted).  *See also Craig*, 576 A.2d at 695 *quoting Monroe Park Apartments Corp. v. Bennett*, 232 A.2d 105, 108 (Del. 1967).

[31] *Volkswagen of Am., Inc. v. Costello*, 880 A.2d 230, 233 (Del. 2005) (citation omitted) *quoting* Restatement (Second) of Torts § 355 (1965).  To be clear, "[p]ossession and control are related, but nonetheless jurisprudentially distinct, concepts." *Id.* at 234 (citation omitted).

control of portions of the land which the lessee is entitled to use.'"[32]  Under the second limitation, "there is no duty … to warn an invitee of a dangerous condition which is obvious to a person of ordinary care and prudence."[33]  This limitation concerns "a condition that creates a risk of harm that is visible, well known, or discernable by casual inspection to those of ordinary intelligence."[34]  But that doctrine is not unlimited; the landlord-tenant relationship "raises independent legal obligations."[35]

Irrespective of the common law, the "Code imposes a duty on landlords to maintain the leased premises in a safe, sanitary condition…."[36]  Its provisions "[extended] landlord liability under an ordinary negligence standard *to all defects*[] … in the rental unit of which the *landlord was aware or should have been aware* which endanger the health, welfare or safety of the tenant…."[37]  To that end, the landlord must "[m]ake all repairs and arrangements necessary to put and keep the rental unit and the appurtenances thereto in as good a condition as they were, or

---

[32] *Id.* at 233 *quoting Craig*, 576 A.2d at 694.

[33] *Niblett v. Pa. R.R. Co.*, 158 A.2d 580, 582 (Del. Super. Ct. 1960) (citations omitted).

[34] *Alcantara v. Cavalier Grp., Inc.*, 2019 WL 4187542, at *2 (Del. Super.) (emphasis added) *citing Foreman v. Two Farms, Inc.*, 2018 WL 3949294, at *2 (Del. Super.).  So "if a danger is so apparent that the invitee can reasonably be expected to notice it and protect against it, the condition itself constitutes adequate warning."  *Niblett*, 158 A.2d at 582 (citations omitted).

[35] *Alcantara*, 2019 WL 4187542, at *3 (citations omitted).

[36] *New Haverford P'ship v. Stroot*, 772 A.2d 792, 795 (Del. 2001).  These duties govern "at all times during the tenancy…." 25 *Del. C.* § 5305(a).

[37] *Brandt v. Rokeby Realty Co.*, 2004 WL 2050519, at *2 (Del. Super.) (first alteration in original) (emphasis added) *citing Rosenberg v. Valley Run Apartments Assocs.*, Del. Super., C.A. No. 1143, 1973, Walsh, J. (Apr. 29, 1976) (Letter Op. at 3).

ought by law or agreement to have been, at the commencement of the tenancy."[38]

They also must "[c]omply with all applicable provisions … governing the maintenance[] … of the rental unit and the property of which it is a part."[39] A tenant thus has a cause of action "for personal injuries sustained as a result of [her] landlord's negligent failure to" heed these duties,[40] provided "that the condition causing the injury was 'defective and [the landlord] should reasonably have been aware of the defect....'"[41]

The Code treats as landlord "[a]ny person with whom the tenant normally deals as a landlord[,]" "[t]he owner, lessor or sublessor of the rental unit[,]" or "any person authorized to exercise any aspect of the management of the premises...."[42] These persons may shift certain responsibilities to the tenant. Namely, they "may

---

[38] 25 *Del. C.* § 5305(a)(4).

[39] *Id.* § 5305(a)(1). Various additional provisions are implicated here. *See Sussex Cnty. Ordinances* §§ 71-12.J, -13.L. *See also* 31 *Del. C.* § 4112(a) ("The owner … shall maintain such buildings and premises in compliance with these requirements."); *id.* § 4113(j) ("Every stair, porch, balcony and all appurtenances attached thereto shall be so maintained as to be safe to use … and shall be maintained in sound condition and repair.").

[40] *New Haverford P'ship*, 772 A.2d at 795.

[41] *Cruz v. G-Town Partners, L.P.*, 2010 WL 5297161, at *13 (Del. Super.) (ellipses in original) *quoting Ford v. Ja-Sin*, 420 A.2d 184, 186 (Del. Super. Ct. 1980). Consequently, "[a] landlord's duty to repair is contingent upon whether a defective condition existed and whether the landlord was aware of or could have discovered a defect through reasonable inspection." *Panansewicz v. Jennings*, 2014 WL 1270014, at *2 (Del. Super.) (citations omitted).

[42] 25 *Del. C.* § 5141(18)(a), (c). The definitions quoted here are not exhaustive.

agree by a conspicuous writing, separate from the rental agreement, that the tenant is to perform specified repairs, maintenance tasks, alterations or remodeling…."[43]

### *Parties' Contentions and Analysis of Each Under the Law*

### *Actual Control*

Defendants claim they "did not retain control or possession over any portion of the property[,]" and thus "did not owe Plaintiff a legal duty…."[44] Plaintiff responds that Defendants' authorities are inapplicable in the residential landlord-tenant context.[45] Those cases are indeed distinguishable;[46] moreover, control is not the sole determinant for summary judgment of a code-based claim.

The Code imputes control to the landlord by its plain language, because it charges Defendants with repairs and maintenance.[47] In *Ford v. Ja-Sin*, the plaintiff, a guest of the tenants, "tripped on a loose tread" on an outside stairway.[48] The landlord likely did not control the stairs.[49] Nevertheless, the Court agreed "that the

---

[43] *Id.* § 5305(c). That agreement's enforceability is contingent on four conditions, including that "[t]he work is not necessary to bring a noncomplying rental unit into compliance with a building or housing code, ordinance or the like…." *Id.* § (c)(2).

[44] Defs. Br. in Support of Mot. for Summ. J., D.I. 55, at 2; D.I. 54, at 6.

[45] D.I. 56, at 2–3.

[46] For their actual control argument, Defendants cite to *Scott v. Acadia Realty Tr.*, 2009 WL 5177152 (Del. Super.) (slip-and-fall on ice in retailer's parking lot), *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688 (Del. Super. Ct. 1989) (third-party criminal conduct on and off the premises of a mall complex), and *Volkswagen of Am., Inc. v. Costello*, 880 A.2d 230 (Del. 2005) (commercial slip-and-fall at plaintiff's place of employment). None of these cases center on the residential landlord-tenant relationship.

[47] 25 *Del. C.* § 5305(a)(1)–(5).

[48] *Ford v. Ja-Sin*, 420 A.2d 184, 186 (Del. Super. Ct. 1980).

[49] The tenants were the sole occupants of the upper story; the landlord retained the lower. *Id.* at 185. Further, "[t]he lease agreement provided that the tenants were to 'take good care of the

code has *effectively reversed* the Common Law rule so as to place the duty of maintenance and repair on the landlord rather than the tenant."[50]  It also noted that "[w]ere this issue [of the landlord's control over the stairway] relevant in the case at bar, it would ultimately be a question of fact for the jury to decide."[51]  *Sanchez-Castillo v. Chirico*, where the plaintiff "tripped on a broken floor tile in her apartment[,]" demonstrates that "only actual or constructive notice of a defect can give rise to a landlord's duty to repair...."[52]

Control hinges on "the 'authority to manage, direct, superintend, restrict or regulate.'"[53]  The Court looks to "the landlord's involvement with the leasehold";[54] i.e., the "actual management of the leased premises."[55]  For example, where the

---

house' and 'make at their own expense the necessary repairs caused by their own neglect or misuse.'" *Id.*  The Court assumed *arguendo* (albeit while addressing the plaintiff's recovery as a social guest) that "the stairway … was not a common area under the landlord's control." *Id.* at 188.

[50] *Id.* at 186 (emphasis added).

[51] *Id.* at 188 n.7.

[52] *Sanchez-Castillo v. Chirico*, 9 A.3d 476, at *1, 2 (Del. 2010).  Of course, the Court also has opted to factor actual control into its analysis of a residential landlord's liability.  *See Ambrosio v. Drummond*, 2017 WL 1437314, at *3 (Del. Super.).  But *Ambrosio* is distinguishable; among other things, it centered on lighting for a roadway—the ownership of which was unclear— adjacent to a rental unit. *Id.* at *3.  At the end of the day, cases like *Ford* and *Sanchez-Castillo* suggest that control is not the sole determinant at the summary judgment stage.

[53] *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 695 (Del. Super. Ct. 1989) *quoting Kirby v. Zlotnick*, 278 A.2d 822, 824 (Conn. 1971).

[54] *Heaps v. Luna*, 2012 WL 7760048, at *4–5 (Del. Super.).  Depending on the lease document or other factors, actual control can at times be a legal question. *Id.* at *5–7 (examining cases which treated actual control as a matter of law).

[55] *Argoe v. Com. Square Apartments Ltd. P'ship*, 745 A.2d 251, 255 (Del. Super. Ct. 1999) *quoting Craig*, 576 A.2d at 696.  *See also Heaps*, 2012 WL 7760048, at *5 ("landlord's actual conduct").

landlord did not "enter[] the premises regularly…. [or] influence[] the day to day routine in the premises[,]" such conduct "did not amount to actual control…."[56]

The parties dispute Defendants' control and notice. Plaintiff produces communications that suggest she relied on Defendants for maintenance.[57] The rental agreements charge Defendants with maintenance. And when DSHA inspections flagged the entranceway as hazardous, DSHA ostensibly directed Defendants to remedy that defect.[58] Nevertheless, Defendants conclude otherwise, claiming there was no "day to day maintenance" and that they "only enter[ed] the property to make repairs at the request of Plaintiff, pursuant to the lease."[59]

On the issue of notice, Defendants assert that Plaintiff's responsive affidavit provides insufficient evidentiary support. But "[a]fter the summary judgment burden shift, the non-moving party … may offer affidavit(s) based upon 'personal knowledge[] [and] set forth such facts as would be admissible in evidence….'"[60]

---

[56] *Johnson v. 1001 Mattlind Way, LLC*, 2012 WL 1409341, at *1–2 (Del. Super.) (internal quotation marks omitted) (alteration to punctuation).

[57] D.I. 56, Ex. C. *See also* Tolliver Aff., D.I. 56, at 2–3; D.I. 56, at 8–9. In turn, the record suggests both regular entry (at least by Mr. Musser) and the Defendants' notice of the defect.

[58] D.I. 56, Ex. B, at 23–26. Plaintiff testified (apparently regarding the timeline when the stairs were still a ramp) that "[e]very time that we have … the inspections, … they put down everything that's wrong. So they knew about the step, but he was told to fix it…." Tolliver Dep., D.I. 55, Ex. E, at 35.

[59] D.I. 54, at 2; D.I. 55, at 2.

[60] *Lehner v. Dover Downs, Inc.*, 2018 WL 2363474, at *2 (Del. Super.) (third alteration in original) *quoting* Super. Ct. Civ. R. 56(e). *See also Laugelle v. Bell Helicopter Textron, Inc.*, 88 A.3d 110, 117 (Del. Super. Ct. 2014) (citations omitted) ("The Court may consider an … affidavit," provided that the evidence is otherwise admissible and "amounts to more than mere speculation…."). *See generally* 73 Am. Jur. 2d *Summary Judgment* § 29 (citation omitted) ("Evidence presented in a self-serving affidavit … is enough to thwart a summary judgment

Because the responsive affidavit is based on Plaintiff's personal experience—as she details communications in which she notified Defendants of the defect—it is sufficient. And independent of her affidavit Plaintiff has created a factual issue on the question of notice.[61] A reasonable jury could find in Plaintiff's favor.

### *Danger Developing After Possession*

Since Defendants formulate Delaware law to state that "a landlord out of possession does not owe a duty of care to a tenant, absent specific circumstances[,]" they conclude they "owed no duty of care to Plaintiff…."[62] But the Code requires maintenance of premises as they were at the initiation of occupancy.[63] Additionally, *Volkswagen*—a commercial slip-and-fall case which Defendants wield—acknowledged that this limitation on liability will not apply "where the owner

---

motion, unless it fails to meet the usual requirements of any other form of evidence at [that] … stage.").

[61] The record demonstrates recurring problems with the porch that were addressed, in some part, by Defendant. "If a landlord undertakes repairs and maintenance for a tenant, reasonable care must be used in undertaking those services." *Brandt v. Rokeby Realty Co.*, 2004 WL 2050519, at *3 (Del. Super.) *citing Sipple v. Kaye*, 1995 WL 654139, at *2 (Del. Super.). Plaintiff's messages with Mr. Musser in Exhibit C—that she had tripped multiple times on the ramp—lend an inference that he may have been on notice of problems. D.I. 56, Ex. C, at 29. And Plaintiff testified in her deposition that "he was told to fix [the step], … they knew about it." Tolliver Dep., D.I. 55, Ex. E, at 35.

[62] D.I. 55, at 1.

[63] 25 *Del. C.* § 5305(a)(4) (emphasis added) ("The landlord shall …: [m]ake all repairs and arrangements necessary to put and keep the rental unit and the appurtenances thereto in as good a condition *as they were*, or ought by law or agreement to have been, *at the commencement of the tenancy*.").

'retains control of portions of the land which the lessee is entitled to use[,]'"[64] a disputed factual issue here.

### Open and Obvious Danger

Defendants cite to *Niblett v. Pennsylvania Railroad Company* for the proposition that "when the danger is open and obvious and is avoidable in the exercise of ordinary care, it is not negligent to allow the danger to exist."[65] Plaintiff responds that *Niblett* is inapposite in this context; further, she argues that the danger was not avoidable here.[66] Indeed, Defendants' proffered cases "only address the duty to warn of a condition."[67] Nor do they involve the residential landlord-tenant relationship.

To reiterate, the Code mandates landlords "maintain the premises in a reasonably safe condition and … undertake any repairs necessary to achieve that end."[68] In tandem with that objective, "[a]n open and obvious condition does not obviate a landowner's duty to keep its premises reasonably safe for its business invitees."[69] The Court should refrain from "conflat[ing] an alleged breach of a duty

---

[64] *Volkswagen of Am., Inc. v. Costello*, 880 A.2d 230, 233 (Del. 2005) *quoting Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 694 (Del. Super. Ct. 1989). *See also Panansewicz v. Jennings*, 2014 WL 1270014 (Del. Super.). *Panansewicz* revolved around a condition allegedly arising after the plaintiffs' possession: importantly, "[i]ssues of fact exist[ed] as to … whether Defendant-husband retained any control of the property by assuming responsibility for repairs." *Id.* at *2–4.

[65] D.I. 54, at 6 *citing Niblett v. Pa. R.R. Co.*, 158 A.2d 580, 582 (Del. Super. Ct. 1960).

[66] D.I. 56, at 10–11.

[67] *Foreman v. Two Farms, Inc.*, 2018 WL 3949294, at *3 (Del. Super.) (citations omitted).

[68] *Ford v. Ja-Sin*, 420 A.2d 184, 186 (Del. Super. Ct. 1980).

[69] *Foreman*, 2018 WL 3949294, at *3.

to warn with the duty to keep … premises reasonably safe."[70]  Further, this Court has adopted the premise that "'[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness*.'"[71]  Thus, Defendants' common-law theory will not exempt them from their duties where the harm is anticipated.  A person of ordinary prudence would still need to use the stairway to enter and exit the premises; hence, the harm could be anticipated.

Finally, excepting "very clear cases[,]" this inquiry—"whether a dangerous condition exists and whether the danger was apparent to the plaintiff"[72]—is ill-suited for summary judgment.[73]  The facts of Defendants' proffered cases evidenced a clear danger that warranted summary judgment.  But those cases are not analogous here.  *Niblett* involved a railroad crossing.[74]  *Macey*, a products liability case, involved

---

[70] *Id.* at *3.  This case did not involve the Code or a residential landlord, but the Court treats as persuasive its precise separation of the various duties.

[71] *Foreman*, 2018 WL 3949294, at *2 (emphasis in original) *quoting* Restatement (Second) of Torts § 343A(1) (1965).  *See also id.* at *2 (discussing *Woods v. Prices Corner Shopping Ctr. Merchs. Ass'n*, 541 A.2d 574, 576 (Del. Super. Ct. 1988)).

[72] *Alcantara v. Cavalier Grp., Inc.*, 2019 WL 4187542, at *2 (Del. Super.) *citing Foreman*, 2018 WL 3949294, at *2.

[73] *Duran v. E. Athletic Clubs LLC*, 2018 WL 3096612, at *2 (Del. Super.) *citing Jones v. Clyde Spinelli, LLC*, 2016 WL 3752409, at *2 (Del. Super.) ("Generally, whether a dangerous condition exists and whether the danger was apparent to the plaintiff are questions for the jury.").

[74] *Niblett v. Pa. R.R. Co.*, 158 A.2d 580, 581–82 (Del. Super. 1960).  Under that day's clear conditions, the decedent presumably could scan the crossing for oncoming traffic.  He also was aware of the risk, having traversed it multiple times to visit the site.  *Id.* at 582–83.

injuries from diving into a residential swimming pool.[75] Neither implicated the residential landlord-tenant relationship. A person of ordinary prudence could protect against—i.e., avoid—those hazardous conditions. Here, though, Plaintiff contends that the stairs were her only means of entry. Although Plaintiff likely appreciated the danger (since she and a guest had previously tripped on the board), she contends she sought to have Defendants repair it.[76]

### *Joanne Musser's Duty of Care*

According to Defendants, Joanne Musser did not owe a duty of care to Plaintiff, since she purportedly was not involved in property management or in communications with Plaintiff.[77] But Plaintiff alleges that Mrs. Musser was involved in collecting the rent and communicating about maintenance.[78] Further, Defendants admit that they were co-owners of the property.[79] Since the Code defines as landlord any individual "with whom the tenant normally deals as a landlord[,]" that owns the rental unit, or that exercises management, these facts are legally operative.[80] Summary judgment is not appropriate as to Joanne Musser.

---

[75] *Macey v. AAA-1 Pool Builders & Serv. Co.*, 1993 WL 189481, at *1, 3 (Del. Super.).
[76] D.I. 56, at 9; Tolliver Aff., D.I. 56, at 2–3.
[77] D.I. 55, at 9.
[78] D.I. 56, at 12; Tolliver Aff., D.I. 56, at 3; D.I. 56, Ex. C, at 49 (emphasis added) (enclosing a text message to Mr. Musser that reads, "[I] keep *asking your wife* if her electric is on or can [I] get info to contact electric company myself.").
[79] D.I. 55, Ex. B, ¶¶ 4, 6; D.I. 55, at 2.
[80] 25 *Del. C.* § 5141(18).

## *Conclusion*

The common-law bars to recovery which Defendants wield do not categorically relieve them of their duties to repair and maintain the premises. Further, Defendants do not produce a legally cognizable agreement to shift responsibilities. There remain genuine issues of material fact. Plaintiff has produced evidentiary support that Defendants assumed control over the porch and were aware of the loose board. The board qualifies as the sort of defect which the Code charges landlords with repairing. For these reasons, summary judgment is denied.

**IT IS SO ORDERED.**

**/s/Sonia Augusthy**
Judge Sonia Augusthy